JMK:DCP/JPM/JPL
F. #2012R01716

FILED
CLERK

2017 OCT -5 PM 1: 16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MICHAEL LESLIE COHEN,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - X

**INDICTMENT**

**CR 17 544**

Cr. No. _____
(T. 15, U.S.C., §§ 80b-6, 80b-14 and 80b-17;
T. 18, U.S.C., §§ 371, 981(a)(1)(C),
1001(a)(2), 1343, 1349, 1512(c)(2), 1512(k), 2
and 3551 et seq.; T. 21, U.S.C., § 853(p); T.
28, U.S.C., § 2461(c))

DeARCY HALL, J.

GOLD, M.J.

THE GRAND JURY CHARGES:

    At all times relevant to this Indictment, unless otherwise stated:

I.    Summary

    1.    The defendant MICHAEL LESLIE COHEN was a United States citizen who resided in London, England. COHEN was the head of the European office of publicly traded hedge fund Och-Ziff Capital Management Group LLC ("Och-Ziff"), and was responsible for overseeing Och-Ziff's investments in Europe, the Middle East and Africa. COHEN was also an Executive Managing Director and a member of the partnership management committee of Och-Ziff. COHEN was an "investment adviser" and a "person associated with an investment adviser," as those terms are used in Title 15, United States Code, Section 80b-2(a)(11) and (a)(17), respectively, and therefore owed his clients a fiduciary duty. In connection with his employment at Och-Ziff, COHEN was also responsible for avoiding both actual and apparent conflicts of interests between his personal interests and the interests of Och-Ziff and its subsidiary and affiliated entities, and for disclosing any potential conflicts of interest to Och-Ziff legal personnel.

1

2.      The "Charitable Foundation," an entity the identity of which is known to the Grand Jury, was a United Kingdom based charitable organization and investor.   The defendant MICHAEL LESLIE COHEN and Och-Ziff and its affiliate entities including "OZ Management LP" provided investment advice and management services to the Charitable Foundation.

3.      Beginning in or about November 2010, as part of obtaining the Charitable Foundation's consent to purchase stock shares in a company called Strata Limited ("Strata"), the defendant MICHAEL LESLIE COHEN, along with others, made material misrepresentations and omissions to the Charitable Foundation concerning conflicts of interest and self-dealing that existed with the transaction, including: (a) failing to disclose that one of the proposed sellers of Strata shares, Co-Conspirator #1 ("CC-1"), an individual whose identity is known to the Grand Jury, owed COHEN $18 million and was planning to use proceeds from the sale of the Strata shares to repay COHEN $4 million; (b) concealing the identity of another proposed seller of Strata shares, Co-Conspirator #2 ("CC-2"), an individual whose identity is known to the Grand Jury, because CC-2, like COHEN, was a "related party" and thus had a conflict of interest in the transaction; and (c) failing to disclose that COHEN had recently sold back to a third proposed seller of Strata shares, "John Doe," an individual whose identity is known to the Grand Jury, certain Strata shares while understanding that those same shares would be re-sold as part of the transaction.

4.      In or about March 2012, the defendant MICHAEL LESLIE COHEN learned that the U.S. Securities and Exchange Commission ("SEC"), an agency of the United States, had served a subpoena on Och-Ziff requiring the production of materials related to, among other subject matters, CC-1.   To continue hiding the scheme and self-dealing, and to

2

explain the fact that CC-1 had repaid him $4 million on a personal loan immediately after

receiving the proceeds of the Strata stock sale, COHEN caused CC-1 to create a fake letter,

backdated to before the sale, which falsely represented that CC-1 would not use any proceeds

from the sale to repay his personal loan to COHEN (the "Backdated Letter"). In or about May

2013, COHEN made materially false statements about the Backdated Letter to law enforcement

agents of the Federal Bureau of Investigation ("FBI") and the Internal Revenue Service ("IRS")

and an attorney for the SEC, including that COHEN did not know that the letter was backdated

and that he had received the letter prior to the Strata stock transaction.

II.     Investment Adviser and Wire Fraud Schemes

        A.      Och-Ziff's Status as a Registered Investment Adviser

                5.      Och-Ziff had its headquarters in New York, New York, and its shares

were listed on the New York Stock Exchange. Och-Ziff provided asset management services

for individual hedge funds and alternative investment vehicles (the "Och-Ziff Hedge Funds") in

return for management fees and incentive income. Investments by outside investors (also called

limited partners) into the Och-Ziff Hedge Funds were approved by Och-Ziff personnel in New

York; significant private investments made by the Och-Ziff Hedge Funds were vetted and

approved by personnel in New York; and all expenses incurred by any entity within Och-Ziff

had to be approved by personnel in New York prior to being paid. All Och-Ziff external e-mails

sent or received were routed through the Eastern District of New York, including those sent or

received by employees based in Och-Ziff's London, England office. Internal e-mails between

Och-Ziff employees based in London and New York were also routed through the Eastern

District of New York.

3

6.      OZ Management LP, a subsidiary of Och-Ziff, was a registered investment adviser.   As a registered investment adviser, OZ Management LP was required to file a form to register itself as an investment adviser ("Form-ADV"), and amendments to the Form-ADV, with the SEC.   On or about and between March 30, 2007 and March 31, 2011, the defendant MICHAEL LESLIE COHEN was listed in multiple Forms-ADV filed by OZ Management LP with the SEC under the schedule of owners and executive officers of OZ Management LP.

B.      COHEN Solicited the Charitable Foundation to Invest in a Joint Venture Focused on Africa

7.      In or about January 2008, Och-Ziff publicly announced that it had created a joint venture company called Africa Management Limited ("AML") with two South African business partners for the purpose of investing in African mining, oil and mineral concessions. Beginning on or about March 31, 2008, OZ Management LP listed AML as an affiliated investment adviser on its Form-ADV filed with the SEC.   Internal AML documents demonstrate that the defendant MICHAEL LESLIE COHEN was a director of AML between at least on or about October 29, 2008 and July 2, 2012.

8.      AML established two investment funds that it managed and advised; the first fund was named African Global Capital, LP ("AGC I") and the second fund was named African Global Capital II, LP ("AGC II").   AGC II was open to investments by outside investors, such as the Charitable Foundation.   OZ Management LP recognized investments made into AGC II as part of OZ Management LP's assets under management, and AGC I and AGC II were part of Och-Ziff's strategy to grow its assets under management after its initial public offering.   Och-Ziff's approval was required for all investments by AGC I and AGC II, both of which relied upon Och-Ziff's legal and compliance functions to perform due diligence, provide legal advice and document transactions.   AML also relied upon the expertise of Och-

4

Ziff personnel to evaluate the commercial terms of proposed transactions and to manage AGC I and AGC II investments.

9.      The defendant MICHAEL LESLIE COHEN also directly marketed AGC II to other prospective investors through meetings and presentations, including in the United States.   In or about and between May 2008 and October 2008, Och-Ziff, COHEN and others solicited the Charitable Foundation to make a large investment in AGC II.   In connection with soliciting the Charitable Foundation, on or about June 17, 2008, Och-Ziff's investor relations department in New York sent marketing materials for AGC II by e-mail to the Charitable Foundation.   The marketing materials referenced OZ Management LP's status as an SEC-registered investment adviser, touted Och-Ziff's "global investment management expertise" and highlighted the participation of key Och-Ziff personnel in AGC II, including COHEN and senior Och-Ziff employees based in New York.   In addition, Och-Ziff also provided the Charitable Foundation with a portion of the Form-ADV, which the SEC required investment advisers to provide to clients and potential clients during solicitations.

10.      Prior to the Charitable Foundation's investment in AGC II, the defendant MICHAEL LESLIE COHEN represented to the Charitable Foundation, in sum and substance and in part, that: (a) Och-Ziff's status as an SEC-registered company meant that AGC II would comply with the requirements of U.S. law, including the Foreign Corrupt Practices Act; and (b) Och-Ziff personnel would be responsible for ensuring AGC II's compliance with relevant laws and providing protection against the corruption risks inherent in mining and mineral transactions in Africa.   In its interactions with COHEN and Och-Ziff during the solicitation process, the Charitable Foundation indicated that Och-Ziff's control of AGC II was important to the Charitable Foundation's consideration of a potential investment in AGC II.   Also in connection

5

with the solicitation of its investment in AGC II, the Charitable Trust agreed to "unconditionally waive any objection to the laying of venue and consent to submit to the non-exclusive jurisdiction of the courts of the State of New York and of the United States of America located in the city of New York for any actions, suits or proceedings arising out of or relating to [the confidentiality agreement] and the transactions contemplated hereby[.]"

11.    On or about October 1, 2008, the Charitable Foundation agreed to invest in AGC II as a limited partner.   The Charitable Foundation committed to invest up to $200 million in capital into AGC II, which would be used to fund future investments by AGC II.   The Charitable Foundation made arrangements with Och-Ziff to allow the Charitable Foundation to reallocate its holdings with other Och-Ziff managed investments in order to fund capital calls for AGC II.   That same day, certain Och-Ziff partners, including multiple U.S. citizens, also committed to invest up to $200 million in AGC II through a limited partner company (the "OZ Partner Company").

12.    Pursuant to the agreements executed by the Charitable Foundation to invest in AGC II, related party transactions required the consent of an advisory committee ("Advisory Committee"), which consisted solely of a representative from the Charitable Foundation.   Under its agreements with the Charitable Foundation, the managing partner of AGC II was required to inform the Charitable Foundation of any conflicts of interest that arose from proposed transactions and to obtain an executed Advisory Committee consent form waiving those conflicts.   Many of the functions of the managing partner were carried out by employees of Och-Ziff, including, among others, the defendant MICHAEL LESLIE COHEN.   The Charitable Foundation relied on information, including investment memoranda, prepared and sent by Och-Ziff and its employees, including COHEN.

6

C.     <u>COHEN's Interest in CC-1's Shares of Strata Stock</u>

13.     In or about December 2008, the defendant MICHAEL LESLIE COHEN loaned $18 million to CC-1 to allow CC-1 to make a financing payment on a personal luxury yacht. The loan was eventually secured, in part, by CC-1's interest in Strata shares. Specifically, CC-1 gave COHEN the right to control certain shares of Strata that CC-1 owned.

14.     In or about November 2010, CC-1 was delinquent on repaying the defendant MICHAEL LESLIE COHEN the $18 million personal loan related to the yacht. CC-1 and COHEN therefore agreed that CC-1 would make a $4 million payment to COHEN on or before December 31, 2010. To make that payment, CC-1 would sell his/her Strata shares to AGC II and provide $4 million of the sale proceeds to COHEN.

D.     <u>COHEN's Concealment of CC-2's Identity as a Proposed Seller<br>of Shares of Strata</u>

15.     CC-2 was a South African national who exercised a management role in AGC II through an entity CC-2 controlled. CC-2 also owned shares of Strata as of in or about October 2010, and sought to sell a portion of those shares to AGC II in order to make a profit.

16.     On or about December 9, 2010, the defendant MICHAEL LESLIE COHEN wrote an e-mail to a London based Och Ziff employee, Co-Conspirator #3 ("CC-3"), an individual whose identity is known to the Grand Jury, in which he acknowledged that the Charitable Foundation would not approve the sale of shares of Strata by CC-2 to AGC II. COHEN therefore proposed to have CC-1 sell CC-2's shares of Strata to AGC II and agreed to conceal CC-2's interest in the transaction.

7

E.   COHEN's Interest in John Doe's Shares of Strata

17.   In or around November 2009, the defendant MICHAEL LESLIE COHEN purchased 932.8 shares of Strata from John Doe for approximately Great British Pounds ("GBP") £971,000.

18.   On or about November 23, 2010, the defendant MICHAEL LESLIE COHEN sent an e-mail to John Doe attaching a proposed share purchase agreement regarding the 932.8 shares of Strata.   Pursuant to the agreement between COHEN and John Doe, COHEN agreed to sell back to John Doe the 932.8 shares of Strata.   That same day, COHEN also received a dividend from Strata in the amount of GBP £202,417.60.   Thereafter, John Doe sold the same 932.8 shares of Strata to AGC II.

F.   COHEN Fraudulently Induced the Charitable Foundation to Consent
to AGC II's Purchase of Shares of Strata

19.   The defendant MICHAEL LESLIE COHEN arranged for AGC II to purchase up to ten percent of the shares in Strata by purchasing Strata shares from CC-1, CC-2 and John Doe.

20.   On or about December 16, 2010, as part of obtaining the required conflict waiver from the Charitable Foundation, CC-3 sent an e-mail from his Och-Ziff e-mail address to the Charitable Foundation attaching an investment proposal memorandum and an AGC II Advisory Committee consent form for the Strata transaction.   The investment proposal memorandum stated that AGC II would purchase shares of Strata from two sources: (a) a special purpose vehicle ("SPV") controlled by CC-1; and (b) an SPV controlled by John Doe.   The investment proposal did not provide for the purchase of any Strata shares directly from CC-2 or from the defendant MICHAEL LESLIE COHEN himself.   COHEN provided this and other information to the Och-Ziff personnel who drafted the Advisory Committee consent form.

8

21.     The AGC II Advisory Committee consent form provided to the Charitable Foundation requested the Charitable Foundation's consent to the transaction and failed to accurately disclose the conflicts of interest that arose from AGC II's purchase of Strata shares, including:

(a)     That one of the sellers of the Strata shares, CC-1, owed COHEN millions of dollars on the delinquent $18 million personal loan;

(b)     That COHEN had signed a release on the shares CC-1 would be selling to AGC II, which had been pledged as collateral for the $18 million personal loan;

(c)     That COHEN had arranged to personally receive a $4 million payment from CC-1 on or before December 31, 2010;

(d)     That COHEN had arranged for CC-1 to sell CC-2's shares of Strata to AGC II in order to hide CC-2's identity as a seller; and

(e)     That COHEN had sold back to John Doe 932.8 Strata shares while understanding that those same shares would in turn be sold to AGC II.

22.     On or about December 16, 2010, the Charitable Foundation executed the materially misleading and incomplete AGC II Advisory Committee consent form regarding the Strata share transaction, thus waiving the improperly disclosed conflicts of interest, and sent the executed form by e-mail to CC-3, who, later that day, forwarded the executed consent form by e-mail to the defendant MICHAEL LESLIE COHEN.

23.     On or about December 16, 2010, an Och-Ziff employee located in New York, New York executed drawdown notices to raise the funds for the purchase of the Strata shares.   These drawdown notices were addressed to the Charitable Foundation and the other limited partners of AGC II.

9

24.     On or about December 16, 2010, the Charitable Foundation requested a drawdown from one of the Och-Ziff Hedge Funds to fund the AGC II capital call for the purchase of Strata shares.   This request was approved by an Och-Ziff employee in New York, New York.   On or about December 21, 2010, the Charitable Foundation redeemed $9,830,300 of its interest in an Och-Ziff Hedge Fund to fund the purchase of Strata shares.

25.     On or about December 24, 2010, AGC II purchased 4,000 shares of Strata for a total price of $19,684,000 (approximately $4,921 per share) purportedly from two sellers: 1,900 shares from CC-1 ($9,349,900); and 2,100 shares from John Doe ($10,334,100).   The Charitable Foundation did not know that: (a) 817 of the 1,900 shares purportedly sold by CC-1 actually belonged to CC-2; (b) $4 million of the proceeds of CC-1's sale of his/her 1,083 Strata shares would be paid to the defendant MICHAEL LESLIE COHEN in connection with his/her personal loan; and (c) 932.8 of the 2,100 shares purportedly sold by John Doe had just been transferred to John Doe by COHEN.

26.     On or about December 24, 2010, Northern Trust (Guernsey) Limited sent a wire transfer on behalf of AGC II in the amount of $9,349,900 for the purpose of purchasing the Strata shares purportedly owned by CC-1.   The wire transfer was routed to an account controlled by CC-1 at Investec Bank (Channel Islands) Limited ("Investec Bank") through Northern Trust International Banking Corporation in Jersey City, New Jersey and JPMorgan Chase Bank in New York.   The funds were credited to the Investec Bank account on or about December 29, 2010.   The same day, CC-1 made a payment on his/her personal loan to the defendant MICHAEL LESLIE COHEN by sending COHEN a wire transfer of $4,000,000 from the proceeds of the sale of Strata shares.   The wire transfer was routed through JPMorgan Chase Bank in New York.

10

27.     On or about January 5, 2011, CC-1 caused Investec Bank to send two wire transfers in the total amount of $4,020,457 for the benefit of CC-2.   Both wires were routed through accounts at JPMorgan Chase Bank in New York and Barclays Bank in New York.   The wired money represented proceeds of CC-2's indirect sale of Strata shares to AGC II.

III.    Obstruction of Justice and False Statements

A.      The Investigations

28.     On or about June 10, 2011, the SEC opened an investigation of Och-Ziff, its employees and agents into, among other things, the payment of bribes through or with CC-1 to secure an investment from the Libyan Investment Authority, a sovereign wealth fund in Libya (the "SEC Investigation").   CC-1's relationships and dealings with employees of Och-Ziff were relevant and important to the SEC Investigation.

29.     On or about January 14, 2013, a grand jury in the Eastern District of New York opened a criminal investigation into the activities of Och-Ziff and its employees and agents (the "Grand Jury Investigation").   CC-1's relationships and dealings with employees of Och-Ziff were relevant and important to the Grand Jury Investigation.

B.      The Defendant's Obstruction of the SEC and Grand Jury Investigations

30.     On or about February 14, 2012, the SEC served a subpoena on Och-Ziff. The February 14, 2012 subpoena required Och-Ziff to produce, among other things, all documents related to CC-1 that were created between January 1, 2005 and the date of the subpoena.

31.     In or about March 2012, the defendant MICHAEL LESLIE COHEN informed CC-1 that Och-Ziff was under investigation by the SEC, and asked CC-1 to author a letter stating that CC-1 would not use Strata stock sale proceeds to repay COHEN any portion of

11

the $18 million personal loan related to a yacht.   COHEN asked CC-1 to backdate the letter to October 2010 in order to create the false appearance that the letter preceded the Strata stock sale.

32.    On or about March 19, 2012, CC-1, together with others, created the letter requested by the defendant MICHAEL LESLIE COHEN, falsely dating it October 14, 2010 (the "Backdated Letter").   Shortly thereafter, CC-1 provided the Backdated Letter to COHEN who, in turn, provided a copy of the Backdated Letter to lawyers at Och-Ziff and represented that the Backdated Letter was responsive to the SEC subpoena issued to Och-Ziff.

33.    On or about September 24, 2012, the SEC served the defendant MICHAEL LESLIE COHEN with a subpoena in his personal capacity.   That subpoena required COHEN to produce, among other things, all documents related to or concerning CC-1 that were created between January 1, 2005 and the date of the subpoena.   On or about November 27, 2012, COHEN, through his attorney, produced the Backdated Letter to the SEC in response to the September 24, 2012 subpoena.

34.    On or about May 9, 2013, counsel for Och-Ziff's Audit Committee ("Audit Committee Counsel") attended a meeting at the United States Attorney's Office for the Eastern District of New York ("USAO-EDNY") in Brooklyn, New York with representatives from the USAO-EDNY, the U.S. Department of Justice, Criminal Division, Fraud Section ("Fraud Section"), the FBI and the SEC in connection with both the SEC and the Grand Jury Investigations.   At this meeting, based on representations that had been made by the defendant MICHAEL LESLIE COHEN, Audit Committee Counsel produced a hardcopy of the Backdated Letter to, among others, a Special Agent of the FBI and an SEC attorney.

35.    On or about May 30, 2013, the defendant MICHAEL LESLIE COHEN attended a meeting at the USAO-EDNY with attorneys from the USAO-EDNY and the Fraud

12

Section, law enforcement agents of the FBI and IRS and an attorney for the SEC. In that meeting, COHEN falsely stated that the Backdated Letter was not backdated and that COHEN had received it from CC-1 shortly after he had first discussed having AGC II purchase Strata shares from CC-1 in or about late 2010.

COUNT ONE
(Conspiracy to Commit Investment Adviser Fraud)

36.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

37.     In or about and between May 2008 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL LESLIE COHEN, together with others, did knowingly and willfully conspire to use and cause to be used, the mails and means and instrumentalities of interstate commerce, directly and indirectly: (a) to employ one or more devices, schemes and artifices to defraud Och-Ziff's client and prospective client, to wit: the Charitable Foundation; (b) to engage in one or more transactions, practices and courses of business which operated as a fraud and deceit upon Och-Ziff's client and prospective client, to wit: the Charitable Foundation; and (c) to engage in one or more acts, practices and courses of business which were fraudulent, deceptive and manipulative, contrary to Title 15, United States Code, Sections 80b-6, 80b-14 and 80b-17.

38.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant MICHAEL LESLIE COHEN, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

(a)     On or about November 5, 2010, COHEN waived the control provision of his loan agreement with CC-1 to allow CC-1 to sell approximately 1,350 Strata shares to AGC II.

(b)     On or about November 23, 2010, COHEN sent an e-mail to John Doe attaching a share purchase agreement for Strata shares.

(c)     On or about December 9, 2010, COHEN sent an e-mail to CC-3, which stated: "I spoke to [CC-2] 20 minutes ago.   Told him that wont go ahead if he sells as [the Charitable Foundation] wont approve.   Said he had to find another buyer.   Let me handle."

(d)     On or about December 16, 2010, CC-3 sent an e-mail to an investment professional at the Charitable Foundation, which attached an investment proposal memorandum describing the proposed Strata share purchase and an Advisory Committee consent form.

(e)     On or about December 16, 2010, COHEN caused an Och-Ziff employee in New York, New York to issue a drawdown notice to the Charitable Foundation for the funds necessary for AGC II to purchase Strata shares.

(f)     On or about December 24, 2010, COHEN caused the AGC II administrator to send a wire transfer in the amount of $9,349,900 on behalf of AGC II and for the benefit of CC-1.

(g)     On or about December 29, 2010, CC-1 caused Investec Bank to send a wire transfer in the amount of $4,000,000 for the benefit of COHEN.

(h)     On or about January 5, 2011, CC-1 caused Investec Bank to send a wire transfer in the amount of $3,230,144.40 for the benefit of CC-2.

14

(i)     On or about January 5, 2011, CC-1 caused Investec Bank to send a wire transfer in the amount of $790,312.60 for the benefit of CC-2.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Investment Adviser Fraud)

39.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

40.     In or about and between May 2008 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL LESLIE COHEN, together with others, did knowingly and willfully use and cause to be used, the mails and means and instrumentalities of interstate commerce, directly and indirectly: (a) to employ one or more devices, schemes and artifices to defraud Och-Ziff's client and prospective client, to wit: the Charitable Foundation; (b) to engage in one or more transactions, practices and courses of business which operated as a fraud and deceit upon Och-Ziff's client and prospective client, to wit: the Charitable Foundation; and (c) to engage in one or more acts, practices and courses of business which were fraudulent, deceptive and manipulative.

(Title 15, United States Code, Sections 80b-6, 80b-14 and 80b-17; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT THREE
(Conspiracy to Commit Wire Fraud)

41.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

42.     In or about and between May 2008 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant

MICHAEL LESLIE COHEN, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Charitable Foundation, and to obtain money and property from the Charitable Foundation by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS FOUR THROUGH SEVEN
(Wire Fraud)

43.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

44.     In or about and between May 2008 and January 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL LESLIE COHEN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Charitable Foundation and to obtain money and property from the Charitable Foundation by means of materially false and fraudulent pretenses, representations and promises.

45.     On or about the dates set forth below, for the purpose of executing such scheme and artifice, the defendant MICHAEL LESLIE COHEN, together with others, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below:

16

| Count | Approx. Date | Description |
|-------|--------------|-------------|
| FOUR | 12/16/2010 | An e-mail sent by CC-3 to the Charitable Foundation in London, England, through the Eastern District of New York, which attached an investment proposal memorandum and a misleading and inaccurate AGC II Advisory Committee consent form |
| FIVE | 12/16/2010 | An e-mail sent by COHEN to CC-1's business partner in London, England, through the Eastern District of New York, which contained a spreadsheet of the outstanding yacht loan balance owed to COHEN by CC-1 |
| SIX | 12/22/2010 | An e-mail sent by COHEN to CC-1's business partner in London, England, through the Eastern District of New York, confirming that the wire transfer for the $4 million payment on the personal yacht loan should be made to COHEN's JPMorgan Chase Bank account |
| SEVEN | 12/29/2010 | An e-mail sent by COHEN to an employee of JPMorgan Chase Bank in Delaware, through the Eastern District of New York, seeking to confirm that the $4 million from CC-1 had been received by JPMorgan Chase Bank |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT EIGHT
(Conspiracy to Obstruct Justice)

46.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

47.     On or about and between March 19, 2012 and May 30, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL LESLIE COHEN, together with others, did knowingly and intentionally conspire to obstruct, influence and impede one or more official proceedings, to wit: the SEC Investigation and the Grand Jury Investigation, contrary to Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

17

### COUNT NINE
#### (Obstruction of Justice)

48.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

49.     On or about and between March 19, 2012 and May 30, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL LESLIE COHEN, together with others, did knowingly, intentionally and corruptly obstruct, influence and impede one or more official proceedings, to wit: the SEC Investigation and the Grand Jury Investigation, and attempt to do so.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

### COUNT TEN
#### (Material False Statements)

50.     The allegations contained in paragraphs one through 35 are realleged and incorporated as if fully set forth in this paragraph.

51.     On or about May 30, 2013, within the Eastern District of New York, the defendant MICHAEL LESLIE COHEN, in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Federal Bureau of Investigation, did knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations, to wit: (a) that the Backdated Letter was not backdated, when in fact, as COHEN then and there well knew and believed, the Backdated Letter was backdated; and (b) that COHEN had received the Backdated Letter from CC-1 in 2010, when in fact, as COHEN then and there well knew and believed, he had received the Backdated Letter from CC-1 in or about March 2012.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

18

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THREE THROUGH NINE

52.     The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Three through Nine, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

53.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture or any other property of the defendant up to the value of the forfeitable property

described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code,

Section 853(p); Title 28, United States Code, Section 2461(c))


A TRUE BILL


_____
FOREPERSON



_____
BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


_____
SANDRA L. MOSER
ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE,
CRIMINAL DIVISION, FRAUD SECTION

F. #2012R01716

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*MICHAEL LESLIE COHEN,*

Defendant.

# INDICTMENT

(T. 15, U.S.C., §§ 80b-6, 80b-14 and 80b 17; T. 18, U.S.C., §§ 371,
981(a)(1)(C), 1001(a)(2), 1343, 1349, 1512(c)(2), 1512(k), 2 and 3551
et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Foreperson*

*Filed in open court this* _ _ _ _ _ _ *day, of* _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

*James P. McDonald, David C. Pitluck, Jonathan P. Lax,*
*Assistant U.S. Attorneys (718) 254-7000*