**MORRISON | FOERSTER**

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

March 15, 2019

Writer's Direct Contact
+1 (212) 468.8016
RWhite@mofo.com

By ECF Filing
The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

Re:   *United States v. Michael L. Cohen*, No. 17 CR 544 (NGG)

Dear Judge Garaufis:

We represent defendant Michael Cohen in connection with the above-referenced case. This letter is submitted to reply to the government's February 22, 2019 letter motion seeking disqualification of the undersigned and my firm, Morrison & Foerster.

Subsequent to the filing of the government's letter, government and defense counsel conferred, and based on those discussions, the parties believe that they will be able to agree on measures that would eliminate any potential basis to seek to disqualify Mr. White from representing Mr. Cohen at trial. The parties also agree that any potential conflict posed by Mr. White's serving as trial counsel is waivable and that the Court should conduct a *Curcio* hearing. It is the defense's expectation that Mr. Cohen, who has consulted with separate counsel at Kramer, Levin Naftalis & Frankel, will waive any purported conflict.

## FACTUAL BACKGROUND

Morrison & Foerster's Representation of Mr. Cohen

The government investigation leading to this indictment began in approximately the Fall of 2012. Beginning in October 2012, Mr. Cohen was represented in connection with this investigation by Mr. White of Morrison & Foerster. Mr. White and his firm have been lead counsel for Mr. Cohen regarding the government investigations and related civil litigations for over six years, up until the present. During the course of the government's lengthy and wide-ranging investigation, Mr. White has spent thousands of hours representing Mr. Cohen.

ny-1511063 v5

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
March 15, 2019
Page Two

During this representation, he has reviewed a voluminous number of documents, become intimately familiar with the facts of the case, had numerous meetings and telephone conferences with the government, made a series of oral presentations and written submissions to DOJ and SEC attorneys, and had extensive dealings with other defense counsel in the case. Mr. White has also taken a lead role in dealing with prosecutors since the indictment in this case was unsealed in January 2018 and in representing Mr. Cohen before the Court since his arraignment in June 2018. Since that time, it has always been Mr. Cohen's intention that Mr. White would defend and try the criminal case together with co-counsel from Kramer Levin, which has also appeared for the defense in this case.

Mr. White also represented Mr. Cohen in connection with two other litigations arising from the same set of facts as the current indictment. In November 2014, Mr. Cohen was named as a defendant in *Menaldi v. Och-Ziff Capital Management Group LLC*, No. 14 CV 3251, a private securities class action litigation brought by shareholders of Och-Ziff in the Southern District of New York. In February 2016, the Court granted the motion to dismiss filed by Mr. White and Morrison & Foerster on behalf of Mr. Cohen. In November 2016, the plaintiffs in *Menaldi* filed an amended complaint that, without court approval, sought to add Mr. Cohen back into the case as a defendant. In January 2017, Mr. White and Morrison & Foerster opposed the plaintiffs' attempt to amend their complaint. In September 2017, the Court denied the plaintiffs' attempt to renew their claims against Mr. Cohen and dismissed him from the case a second time.

In addition, in January 2017, the SEC filed a lawsuit against Mr. Cohen, which was assigned to this Court. *SEC v. Cohen, et al.*, No. 17 CV 430 (NGG). During the course of discovery, the SEC produced over 50 million pages of documents which were reviewed and analyzed by Morrison & Forester. In June 2017, Mr. White and Morrison & Foerster filed a motion to dismiss the indictment on various grounds. Mr. White argued the motion before the Court in December 2017. In July 2018, the Court granted the motion, finding that the SEC's case was not brought within the statute of limitations, and dismissing the case in its entirety with prejudice.

Mr. Cohen's Interview with the Government

On May 30, 2013, Mr. Cohen was interviewed by government agents and prosecutors at the U.S. Attorney's Office in Brooklyn. Mr. Cohen was represented at the meeting by Mr. White and Kiersten A. Fletcher, who was then a Morrison & Foerster associate. Ms. Fletcher subsequently left Morrison & Foerster. Present at the interview for the government were five federal agents (three from the FBI and two from the IRS); Assistant U.S. Attorney James Loonam of the Eastern District of New York; Trial Attorney James McDonald of the DOJ Fraud Section; SEC Enforcement Division Attorney Neil Smith; and SEC Staff Accountant Rory Alex. Mr. Loonam and Mr. Smith have subsequently left the government. Mr.

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
March 15, 2019
Page Three

McDonald, who is now an Assistant U.S. Attorney in the Eastern District of New York, is a member of the prosecution team on this case.

On June 3, 2013, two business days after Mr. Cohen's interview with the government, Mr. White had a telephone conversation with the government attorneys and FBI agent handling the case and advised them that Mr. Cohen wished to correct certain statements he had made in the May 30, 2013 interview. Mr. White further advised the government that Mr. Cohen had authorized him to provide the corrected information to the government. Mr. White and Ms. Fletcher were present on the call on behalf of Mr. Cohen. Present for the government were FBI Agent Ryan Stinson, Mr. Loonam, Mr. McDonald and Mr. Smith.

The Government's *Curcio* Letter

At the initial conference in this case, on June 26, 2018, the government advised the Court that it anticipated writing "a potential *Curcio* letter" regarding "some possibility of Mr. White being a witness." (June 26, 2018 Tr. at 20:21-25.) The government stated that "we don't believe it's a disqualifying conflict," and that it would submit the letter "quickly." (*Id.* at 21:11-13.)

Eight months later, on February 22, 2019, the government submitted the instant letter motion.

## ARGUMENT

Legal Framework

The Second Circuit has long recognized that a criminal defendant has a constitutional right to counsel of his choice. *See, e.g., United States v. Perez*, 325 F.3d 115, 124-25 (2d Cir. 2003) ("we have consistently recognized that the right of an accused who retains an attorney to be represented by that attorney is 'a right of constitutional dimension' ") (quoting *United States v. Wisniewski*, 478 F.2d 274, 285 (2d Cir. 1973) and *United States v. Sheiner*, 410 F.2d 337, 342 (2d Cir. 1969)). As a result, a defendant's choice of counsel " 'should not be unnecessarily obstructed by the court.' " *Perez*, 325 F.3d at 125 (citation omitted); *Sheiner*, 410 F.2d at 342. Disqualification of a criminal defendant's counsel of choice is "a measure of last resort," and "may only be utilized when less serious measures" cannot resolve the issue. *United States v. Castellano*, 610 F. Supp. 1137, 1151 (S.D.N.Y. 1985). In recognition of the fact that a motion to disqualify opposing trial counsel "carries the potential to be abused," and has "inherent tactical advantages particularly when it occurs after the culmination of extensive trial preparation," the Second Circuit has required a showing of "necessity" by the movant. *United States v. Bin Laden*, 91 F. Supp. 2d 600, 623 (S.D.N.Y. 2000) (quoting *United States v. Perlmutter*, 637 F. Supp. 1134, 1137 (S.D.N.Y. 1986)); *see*

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
March 15, 2019
Page Four

*United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975) (to call opposing counsel as trial witness, movant must show "compelling and legitimate need" to do so).

The Second Circuit has outlined the framework within which district courts must evaluate claims of conflict of interest on the part of criminal defense counsel. Disqualification is permissible only where the court determines that defense counsel has "an actual conflict so severe" as to indicate *per se* ineffective assistance of counsel, or an analogous conflict similar in "'breadth and depth.'" *Perez*, 325 F.3d at 126 (quoting *United States v. Fulton*, 5 F.3d 605, 611-13 (2d Cir. 1993)). If the court determines that the attorney " 'suffers from a lesser [actual] or only a potential conflict,' then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Id.* (quoting *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994)). An attorney has "an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Perez*, 325 F.3d at 125 (quoting *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002)).

Based on this framework, the Second Circuit has recognized that there is only a "very narrow category of cases" in which it has held that an actual conflict is "so severe" that it is unwaivable. *Perez*, 325 F.3d at 126 (quoting *Schwarz*, 283 F.3d at 91). In *Perez*, the Second Circuit explained that its prior decisions in *Fulton* and *Schwarz*, which dealt with egregious conflicts of interest, illustrate this "very narrow category of cases." In *Fulton*, a government witness in a narcotics prosecution had implicated the defendant's attorney in a related heroin importation scheme. 5 F.3d at 607-08. In *Schwarz*, the defense counsel for an individual officer in a police brutality case had a $10 million contract with the Police Benevolent Association which gave him a financial incentive to refrain from advancing certain defenses at trial on behalf of his officer client. 283 F.3d at 81-82. In *United States v. Liszewski*, No. 06-CR-130 (NGG), 2006 WL 2376382 (E.D.N.Y. Aug. 16, 2006), this Court observed that "the Second Circuit's treatment of *Fulton* and *Schwarz* in the *Perez* decision suggests that these two cases represent extremes where disqualification notwithstanding waiver is appropriate but that in lesser circumstances, if fully informed, a client's waiver should be credited." *Id.* at *4.

In applying the Second Circuit's test, a district court must be mindful that the Supreme Court has ruled that erroneous disqualification of a criminal defendant's counsel of choice is grounds for automatic reversal of a conviction and is not subject to harmless error analysis. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148, 152 (2006) ("[w]here the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation"). *See Liszewski*, 2006 WL 2376382, at *10 (in light of *Gonzalez-Lopez*, district court must be

ny-1511063 v5

**MORRISON | FOERSTER**

The Honorable Nicholas G. Garaufis
March 15, 2019
Page Five

"acutely aware of [its] obligation to permit [defendant] to proceed with counsel of his choice if at all possible" and "must err on the side of non-disqualification").

Legal Analysis

The government's letter raises three potential issues. <u>First</u>, the letter suggests that the government may seek to call Mr. White as a witness. <u>Second</u>, the letter suggests that Mr. Cohen may want to exercise the option to call Mr. White as a trial witness. <u>Third</u>, the letter raises the issue of whether, even if neither party seeks to call Mr. White, measures should be taken to assure that he does not become an "unsworn witness." As described more fully below, the parties believe that they will be able to agree on measures that eliminate or ameliorate each of these conflict issues and that disqualification is not appropriate, although the Court should conduct a *Curcio* hearing.

A.   The Possibility of the Government Calling Mr. White as a Trial Witness

The government's February 22 Letter indicated that Mr. White was a potential government trial witness regarding (1) the May 30, 2013 government interview of Mr. Cohen which he attended; and (2) the follow-up June 3, 2013 telephone call in which he participated. (2/22/19 Gov't Letter at 8-9.)

The government's letter also suggested that Mr. White could be a potential witness with respect to his communications with Mr. Cohen between the May 30 interview and the June 3 telephone call (*id.* at 8), but after discussions between government and defense counsel, the government has advised that it is <u>not</u> seeking Mr. White's testimony regarding these communications (which, in any event, the defense believes are protected by the attorney-client privilege).

With respect to the other two events (the interview and the follow-up telephone call), the government advised the defense, subsequent to the filing of its letter, that it now does <u>not</u> anticipate calling Mr. White as a trial witness, so is not now seeking disqualification on that basis. However, the government indicated that, given the inherent uncertainties of trial, there could be unforeseen developments that could lead it to revisit this issue.

Any possibility that the government would need Mr. White to testify at trial appears highly remote, since there are numerous other witnesses who could testify regarding the May 30 interview and the June 3 telephone call. *See United States v. Cunningham*, 672 F.2d 1064, 1075 (2d Cir. 1982) (defendant's right to be represented by counsel of his choice is "too important to be denied on the basis of a mere, though substantial possibility" that his lawyer could be called as a witness); *Castellano*, 610 F. Supp. at 1150 (same). For example, at the May 30 interview, there were no fewer than five federal agents who were present for the interview. In addition, there were at least three other individuals present on the government

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
March 15, 2019
Page Six

side (Mr. Loonam, Mr. Smith and Mr. Alex) who will not be appearing as trial counsel in this case who could also testify about the interview. With respect to the June 3 telephone call, an FBI agent was present for the telephone conversation and prepared a detailed summary of the call. Mr. Loonam and Mr. Smith likewise were on the call. The possibility that the government would need (and be permitted by the Court) to bypass calling the multiple available government-affiliated witnesses to these events in order to instead call the defendant's primary counsel as a trial witness is highly unlikely.[1]

Numerous Second Circuit cases have ruled that the availability of another witness to the relevant event alleviates any conflict concerns and obviates the necessity of calling trial counsel as a witness. Indeed, this rule has been consistently followed both where the government seeks to disqualify defense counsel and where a defendant seeks to disqualify a prosecutor. *See United States v. Kliti*, 156 F.3d 150, 156 (2d Cir. 1998) (need for *Curcio* hearing only became "patent" when witness to conversation between defense counsel and government witness became unavailable); *United States v. Regan*, 103 F.3d 1072, 1083 (2d Cir. 1997) (denial of defendant's motion to disqualify prosecutor who questioned him in grand jury was proper because, since there was another prosecutor present in grand jury who was available to testify at trial, there was "no compelling reason" for trial prosecutor's testimony); *United States v. Dennis*, 843 F.2d 652, 656 (2d Cir. 1988) (if there was another witness to defense counsel's conversation with government witness, the situation "certainly would not have put the lawyer's credibility at issue"); *United States v. Torres*, 503 F.2d 1120, 1126 (2d Cir. 1974) (calling prosecutor as trial witness to testify to courtroom encounter only permissible where "all other sources of possible testimony have been exhausted"); *Bin Laden*, 91 F. Supp. 2d at 623 (rejecting defense motion to disqualify prosecutors who participated in pre-trial interviews of defendant along with agents and ruling that, since "third parties can testify as to everything that occurred during those interviews, any need for [the prosecutors] to testify is quite limited"); *United States v. Wallach*, 788 F. Supp. 739, 744 (S.D.N.Y. 1992) (denying defense motion to disqualify prosecutors who participated in interviews of government witness with agents, ruling that "[w]here witnesses other than [trial counsel] can testify to the same matters or conversations, no compelling need exists").

Moreover, to alleviate any concern that Mr. Cohen could argue at trial that Mr. White was not authorized to make the statements on his behalf in the June 3 telephone conversation, Mr. Cohen will agree to stipulate that Mr. White was authorized to do so. Such an approach has been approved in other cases as a means to avoid conflict issues where the authorization of

---

[1] It would be similarly unlikely that Mr. Cohen would seek (and be permitted by the Court) to ignore the other defense witness available to him and instead seek to call AUSA McDonald as a trial witness, who was also present at the interview, thus forcing his disqualification. Avoiding such tactics is exactly why courts have required a showing of "compelling and legitimate need" to justify disqualification. *Schwartzbaum*, 527 F.2d at 253; *Bin Laden*, 91 F. Supp. 2d at 623 & n.35; *Perlmutter*, 637 F. Supp. at 1137.

ny-1511063 v5

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
March 15, 2019
Page Seven

an attorney to make statements to the government could become a potential disputed issue at trial. *See, e.g., United States v. Joyce*, 311 F. Supp. 3d 398, 404 (D. Mass. 2018) (where defendant agreed to stipulate that he had reviewed and authorized the statements submitted by his attorney to state ethics commission and that he was the source of the statements, the government had failed to show that the defense attorney's testimony was necessary to its case and thus disqualification was not appropriate).

B.   Mr. Cohen's Ability to Call Mr. White as Trial Witness

The government also suggests that Mr. Cohen may wish to call Mr. White as a trial witness to contradict the government's version of the May 30 interview and June 3 telephone conversation. (2/29/19 Gov't Letter at 9.) However, Mr. Cohen has no need to do this since Ms. Fletcher, the former Morrison & Foerster associate, was present for both the interview and telephone conversation, and is available to testify. But even if this were not the case, this is clearly a waivable conflict. Numerous cases establish that a defendant may knowingly forego the right to call his attorney as a trial witness (or forego some other trial tactic or defense) in a *Curcio* hearing in order to allow him to remain as his trial attorney. *See Kliti*, 156 F.3d at 155-57 (defendant should have been given opportunity to waive his right to call his counsel as trial witness once it became clear that his attorney was only witness to exculpatory statement by government witness); *United States v. Lussier*, 71 F.3d 456, 461-63 (2d Cir. 1995) (defendant knowingly waived conflict arising from his attorney's inability to fully cross-examine government witness, who was attorney's former client); *Williams v. Meachum*, 948 F.2d 863, 866-68 (2d Cir. 1991) (defendant knowingly waived conflict arising from his attorney's inability to raise a particular defense at trial); *United States v. Curcio*, 680 F.2d 881, 886 (2d Cir. 1982) (defendant may knowingly waive right to separate representation at trial).

It should be noted that the numerous cases finding such waivers appropriate almost always arise in the context of a defense attorney being the *only* witness to a conversation that will be admitted at trial. Here, by contrast, Mr. White carefully avoided placing himself in the position of being the only witness to the statements made to the government by and on behalf of Mr. Cohen. Precisely to avoid this situation, Mr. White assured that Ms. Fletcher was present for both the May 30 interview and the June 3 telephone conversation. *See Dennis*, 843 F.2d at 656 (commending defense counsel for following the ABA Standards Relating to the Administration of Criminal Justice and ruling that, if there was another witness to defense counsel's conversation with government witness, the situation "certainly would not have put the [trial] lawyer's credibility at issue"). Given Ms. Fletcher's availability as a witness, Mr. Cohen is not faced with the situation where his trial counsel is the only available witness with respect to some relevant event. Nonetheless, to the extent the Court believes that a *Curcio* hearing needs to be conducted to assure that Mr. Cohen knowingly gives up his

**MORRISON | FOERSTER**

The Honorable Nicholas G. Garaufis
March 15, 2019
Page Eight

right to call Mr. White as a trial witness, Mr. Cohen has consulted with separate counsel at Kramer Levin and is prepared to offer such a waiver.

The Second Circuit has made clear that, where an attorney has only a potential conflict, the district court "may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Perez*, 325 F.3d at 125. When a "defendant's two rights conflict, the decision as to which is to take precedence should be left to the defendant." *Curcio*, 680 F.2d at 885. Here, Mr. Cohen's decision to waive any perceived conflict in order to retain Mr. White and his firm as trial counsel is plainly a rational decision. Mr. White is an experienced criminal defense attorney and a former federal prosecutor. By virtue of his representation of Mr. Cohen in this investigation for over six years, Mr. White and his firm have an extensive knowledge of the facts of the case and the voluminous discovery produced in this and related litigations. Moreover, Mr. White and his firm have won dismissals for Mr. Cohen of two other litigations based on substantially the same facts. *See Cunningham*, 672 F.2d at 1070-71 (defendant's right to retain counsel of choice was "particularly strong" where counsel had represented him for over six years and had won court victories that "naturally enhanced [defendant's] confidence" in his attorney); *see also Bin Laden*, 91 F. Supp. 2d at 624-25 (alternative measures should be employed to avoid disqualification of prosecutors and prejudice to government where prosecutors had worked on case for over four years); *Wallach*, 788 F. Supp. at 744 (same). On the other side of the ledger, Mr. Cohen's waiving of the right to call Mr. White as a witness is a modest sacrifice, if any, since he can call Ms. Fletcher, who is a perfectly capable trial witness with respect to the meeting and call that she and Mr. White were both present for. As such, giving up the right to call Mr. White as a trial witness in order to retain him and his firm as trial counsel is, on its face, a plainly rational and logical choice that Mr. Cohen should be permitted to make. Moreover, at any *Curcio* hearing, the Court will be satisfied that Mr. Cohen, advised by separate counsel at Kramer Levin, has made this decision knowingly and intelligently.

C. "Unsworn Witness" Issue

With Mr. White acting as trial counsel, any "unsworn witness" problem can be eliminated, as is customarily done in this district, by avoiding reference to his presence at the May 30 interview and June 3 telephone conversation by name and simply referring to an attorney for Mr. Cohen. Such an approach has been specifically approved by the Second Circuit and other district courts in this circuit. Similarly, if AUSA McDonald serves as one of the government's trial counsel, any mention by name of his participation in the interview and telephone call should be avoided also.

The government routinely adopts such measures when the trial AUSA has interviewed the defendant or questioned him in the grand jury prior to trial, in order to avoid any "unsworn witness" issue. Moreover, the Second Circuit and other courts have held that such measures

**MORRISON | FOERSTER**

The Honorable Nicholas G. Garaufis
March 15, 2019
Page Nine

should be employed to avoid the drastic step of disqualification of a trial attorney (both government and defense counsel). *See Kliti*, 156 F.3d at 156 (district court's exclusion of any reference to defense attorney's presence during relevant conversation was "appropriate" in light of availability of another witness); *Regan*, 103 F.3d at 1083 (government's offer to redact prosecutor's name from grand jury transcripts offered in evidence at perjury trial properly addressed "unsworn witness" issue); *Jones*, 900 F.2d at 520 (no unsworn witness issue existed where defense counsel's name was redacted from proffer letter and no mention of his name was made in connection with letter at trial); *United States v. Bin Laden*, No. S(7) 98 CR. 1023(LBS), 2001 WL 30061 (S.D.N.Y. Jan. 2, 2001) (denying motion for disqualification of prosecutor where government agreed not to make reference to prosecutor's participation in grand jury proceedings and pre-trial interviews of defendant and he would be referred to only as a "government attorney" and not by name); *Bin Laden*, 91 F. Supp. 2d at 624-25 (unsworn witness problem could be avoided by redaction of prosecutors' names from documents and instructions to witnesses to refer only to presence of "government attorney[s]," rather than identifying them by name; such measures would resolve any issue without causing the "substantial prejudice" that would result from disqualifying counsel who had worked on the case for over four years).

Although there would be no "unsworn witness" issue at trial if Mr. White was not identified by name as being present at the May 30 interview and June 3 telephone conversation, in order to further guard against any such issue developing, Mr. Cohen will have one of the attorneys from Kramer Levin cross-examine any FBI agent or other government witnesses who testifies at trial regarding what transpired at the interview or in the telephone conversation.

## CONCLUSION

Since the potential conflict issues raised in the government's February 22 letter do not present a basis for disqualification of Mr. White, and are waivable under Second Circuit precedent, we respectfully request that the Court conduct a *Curcio* hearing to permit Mr. Cohen to waive them.

Respectfully submitted,

*/s/ Ronald G. White*

Ronald G. White

cc:   All counsel of record (by ECF)

ny-1511063 v5