1

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
                                      17-CR-544(NGG)
 3   UNITED STATES OF AMERICA,
                                      United States Courthouse
 4          Plaintiff,               Brooklyn, New York

 5          -against-                May 15, 2019
                                     4:30 p.m.
 6   MICHAEL LESLIE COHEN,

 7          Defendant.
     ------------------------------x
 8
                 TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
 9            BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
                 UNITED STATES SENIOR DISTRICT JUDGE
10   APPEARANCES

11   For the Government:      UNITED STATES ATTORNEY'S OFFICE
                              Eastern District of New York
12                            271 Cadman Plaza East
                              Brooklyn, New York 11201
13                            BY:  JAMES McDONALD
                                   DAVID PITLUCK
14                                 JONATHAN POWELL LAX
                              Assistant United States Attorneys
15
                              UNITED STATES DEPARTMENT OF JUSTICE
16                            1400 New York Avenue, NW
                              Washington, DC 20005
17                            BY:  CHRISTOPHER CESTARO, ESQ.

18   For the Defendant:       MORRISON & FOERSTER LLP
                              250 West 55th Street
19                            New York, New York 10019-9601
                              BY:  RONALD G. WHITE, ESQ.
20                                 AMANDA AIKMAN, ESQ.
                                   - and -
21                            KRAMER LEVIN NAFTALIS & FRANKEL LLP
                              1177 Avenue of the Americas
22                            New York, New York 10036
                              BY:  PAUL SCHOEMAN, ESQ.
23
     Court Reporter:          LINDA D. DANELCZYK, RPR, CSR, CCR
24                            Phone:  718-613-2330
                              Email:  LindaDan226@gmail.com
25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
```

PROCEEDINGS                    2

1               (In open court.)

2               THE COURTROOM DEPUTY:  Criminal cause for a plea.

3               Counsel, please state your appearances.

4               MR. McDONALD:  Good afternoon, Your Honor.

5               James McDonald, Jonathan Lax, Christopher Cestaro,

6       and David Pitluck on behalf of the United States.

7               THE COURT:  Come on up.

8               You may be seated in the back.

9               MR. WHITE:  Good afternoon, Your Honor.

10              For Mr. Cohen, Ronald White from Morrison &

11      Foerster, and Amanda Aikman, also from Morrison & Foerster.

12              MR. SCHOEMAN:  Paul Schoeman from Kramer Levin, also

13      for Mr. Cohen.

14              THE COURT:  All right.

15              And, Mr. Cohen, good afternoon, sir.

16              THE DEFENDANT:  Good afternoon.

17              THE COURT:  Okay, we have a few things that we need

18      to do.

19              First of all, the issue of the representation of the

20      defendant by Mr. White.  I think the government would like us

21      to inquire.

22              MR. McDONALD:  That's correct, Your Honor.

23              THE COURT:  In the nature of a *Curcio* inquiry.

24              MR. McDONALD:  We prepared a suggested colloquy.

25              THE COURT:  Oh, yes, thank you.  I appreciate that.

PROCEEDINGS                                3

1        MR. McDONALD:  It explains the nature of the

2   potential conflicts, as well as the questions that we think

3   would be appropriate in the circumstances.

4        THE COURT:  And I understand that Mr. Schoeman, who

5   is co-counsel for the defendant, can serve in the capacity of

6   *Curcio* counsel.

7        MR. SCHOEMAN:  That's correct, Your Honor.

8        THE COURT:  All right.  Okay, so why don't we

9   just -- why don't I just swear in the defendant, because I am

10  going to ask him some questions in connection with the *Curcio*

11  matter.

12       THE COURTROOM DEPUTY:  Please raise your right hand

13  please.

14       (Whereupon, the defendant was sworn/affirmed.)

15       THE DEFENDANT:  I do.

16       THE COURTROOM DEPUTY:  Thank you.

17       THE COURT:  Okay.

18       Mr. Cohen, I'm advised that your attorney, Ronald

19  White, who has previously represented you during the course of

20  this investigation and was present for and witnessed certain

21  events that may be relevant to your prosecution.

22       I'm also advised that Mr. White made certain

23  statements to the government that may be relevant to your

24  prosecution.

25       These each and together could lead to a conflict of

1    interest.  For example, if a witness to one of these events

2    testifies, but you or Mr. White have a different memory of

3    events, Mr. White would not be able to testify or to use his

4    independent memory of the relevant conversations, and you may

5    have to choose between foregoing representation of your

6    version of the facts or testify and subject yourself to

7    cross-examination at trial.

8            Moreover, the government has said that you made

9    certain statements that were false and other statements

10   concerning your culpability for certain crimes for which you

11   are charged.

12           If you intend to argue at trial that you made these

13   statements or acted at your attorney's behest, you may have a

14   harder time pressing that defense if you are still represented

15   by the same attorney on whose advice you are claiming that you

16   were relying at that time.

17           The government has also said that Mr. White made

18   certain statements to the government concerning your

19   culpability for some of the crimes with which you are charged

20   and that you authorized him to make those statements.

21           If you intend to argue that Mr. White did not make

22   such statements, said something different to the government

23   than what the government says was not authorized by you to

24   make those statements, or you wish to pursue a defense where

25   Mr. White's statement are put at issue, you, again, may have

PROCEEDINGS                                    5

1   more a difficult time pressing that defense, or be unable to

2   call Mr. White as your own witness, if you are still

3   represented by him.

4          Furthermore, it is unlikely that Mr. White will want

5   to pursue a trial strategy that relies on the assertion that

6   he gave you advice or made statements that are being put in

7   question, and it may open him up to scrutiny or make him a

8   witness.  This could, for example, lead him to advise you to

9   take certain steps, including to plead guilty for a crime,

10  rather than present certain arguments which would involve his

11  representation, or make it possible that he would be called as

12  a witness at trial.

13         There may be other issues in addition to the ones

14  I've just described that can arise in which your attorney's

15  ability to do certain things may be affected by the fact that

16  he was present for certain events at issue in the case and

17  made statements which may be at issue in the case.  No one can

18  foresee every possible conflict of interest.

19         So let's start off with a few questions.

20         Do you have any questions about what I have just

21  explained to you?

22         THE DEFENDANT:  No, Your Honor.

23         THE COURT:  Okay.  Now, how have you consulted with

24  Mr. White about these issues?

25         THE DEFENDANT:  Yes, I have, Your Honor.

PROCEEDINGS                                6

1          THE COURT:  Have you consulted with Mr. Schoeman

2     about the issues, independently of Mr. White?

3          THE DEFENDANT:  Yes, I have, Your Honor.

4          THE COURT:  Let me just say this:  You have the

5     right to be represented by an attorney who does not have any

6     possible conflicts of interest in representing you at all

7     stages of this case, including any plea negotiations.  If you

8     proceed with Mr. White, you will be giving up that right.

9          Do you understand that?

10         THE DEFENDANT:  I do, Your Honor.

11         THE COURT:  You also have the right to consult with

12    an independent attorney who can advise you of the possible

13    conflicts of interest that might arise if you proceed with

14    Mr. White.

15         Do you understand that?

16         THE DEFENDANT:  I do, Your Honor.

17         THE COURT:  I understand, however, that Mr. Schoeman

18    is advising you about these possible conflicts.

19         Is that correct?

20         THE DEFENDANT:  Yes, it is, Your Honor.

21         THE COURT:  And you have indicated that you

22    discussed this matter with Mr. Schoeman.

23         THE DEFENDANT:  Yes, I have, Your Honor.

24         THE COURT:  Has Mr. Schoeman answered all the

25    questions that you had about this potential conflict?

PROCEEDINGS                                   7

1              THE DEFENDANT:  Yes, he has, Your Honor.

2              THE COURT:  Are you satisfied that he's answered all

3     your questions sufficiently?

4              THE DEFENDANT:  Yes, I am, Your Honor.

5              THE COURT:  Do you understand what he said to you?

6              THE DEFENDANT:  Yes.

7              THE COURT:  All right.  So tell me in your own words

8     what you understand the potential conflicts of interest to be.

9              THE DEFENDANT:  That if I keep Mr. White as my

10    counsel, that I will not be able to call him as a witness

11    during trial, so I'm giving up that right.

12             Given that he's a potential witness, he might give

13    me advice which is bias.

14             And lastly, if I was to advance the theory that he

15    was not authorized to correct my misstatements, which he did

16    shortly after my interview in May of 2013, that I could not

17    progress that strategy, but that is not a defense strategy

18    which I'm going to pursue.

19             THE COURT:  Okay.  Well, you're not under any

20    pressure to make a decision about this right now, because

21    there is no actual conflict that you could identify, but you

22    are entitled, if you wish, after a reasonable period of time,

23    to think about these matters or to consult further with your

24    lawyer or with another lawyer before you advise the Court

25    about what you wish to do.

PROCEEDINGS                                        8

1          Do you believe that you have had sufficient time to

2   discuss this matter with Mr. Schoeman and to make a decision

3   about how you wish to proceed?

4          THE DEFENDANT:  I have, Your Honor.

5          THE COURT:  And do you want to continue with

6   Mr. White representing you?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  Does the government have any other

9   questions it wishes to have me put to the defendant?

10          MR. McDONALD:  We do not, Your Honor.  Thank you.

11          THE COURT:  Okay.  All right.  Fine.

12          So we will proceed with Mr. Schoeman and Mr. White

13   representing you for purposes of the next step in the process.

14          Agreed?

15          THE DEFENDANT:  Agreed.

16          THE COURT:  Okay.

17          Mr. White, I understand that your client wishes to

18   plead guilty today to Count Ten of the indictment in

19   17-CR-544, pursuant to an agreement; is that right?

20          MR. WHITE:  That's correct, Your Honor.

21          THE COURT:  Okay.

22          Mr. Cohen, your attorney advises me that you wish to

23   plead guilty to Count Eleven -- I'm sorry, Count Ten of the

24   indictment in which you are charged.

25          This is a serious decision and I must be certain

1    that you make it with a full understanding of your rights and

2    the consequences of your plea.  I'm going to explain certain

3    rights that you have and then ask you questions.  You've

4    already been placed under oath, I simply remind you of that.

5           You understand that having been sworn to tell the

6    truth, you must do so.  If you were to deliberately lie in

7    response to any question I ask you, you could face further

8    criminal charges for perjury.

9           Do you understand that?

10          THE DEFENDANT:  I do.

11          THE COURT:  If I say anything that you do not

12   understand, or if you need me to repeat anything, just ask.

13   It's important you understanding everything that goes on in

14   these proceedings.

15          Is that clear?

16          THE DEFENDANT:  That's clear, Your Honor.

17          THE COURT:  All right.

18          How old are you, sir?

19          THE DEFENDANT:  I'm 47.

20          THE COURT:  How far did you go in school?

21          THE DEFENDANT:  I have a BA degree from college.

22          THE COURT:  Where?

23          THE DEFENDANT:  Bowdoin College.

24          THE COURT:  And of what country are you citizen?

25          THE DEFENDANT:  Both the United States and the

PROCEEDINGS                                    10

1    United Kingdom.

2              THE COURT:  Okay.

3              And is English your primary language?

4              THE WITNESS:  It is.

5              THE COURT:  Mr. White, have you had any difficulty

6    communicating with your client in English?

7              MR. WHITE:  No, Your Honor.

8              THE COURT:  Mr. Cohen, I must be certain that

9    whatever decision you make today you make with a clear head,

10   so I'm going to ask you some questions about your health.

11             THE DEFENDANT:  Sure.

12             THE COURT:  Are you currently or have you recently

13   been under the care of a doctor or psychiatrist for any

14   reason?

15             THE DEFENDANT:  No, I haven't.

16             THE COURT:  In the past 24 hours, have you taken any

17   pills, or drugs, or medicine of any kind?

18             THE DEFENDANT:  I took an over-the-counter sleeping

19   pill last night.

20             THE COURT:  Are you rested this morning?

21             THE DEFENDANT:  I have jet lag, Your Honor.

22             THE COURT:  Oh, jet lag, well.

23             There are day flights.

24             THE DEFENDANT:  I woke up at 3:00 this morning

25   because I thought it was 8:00 this morning.

PROCEEDINGS                                    11

1            THE COURT:  I see.

2            In the past 24 hours, have you drunk any alcoholic

3  beverages?

4            THE DEFENDANT:  Yes, I had a glass of wine on the

5  plane ride here yesterday.

6            THE COURT:  Okay.

7            Have you ever been hospitalized or treated for any

8  drug-related problem?

9            THE DEFENDANT:  No, I haven't, Your Honor.

10            THE COURT:  Is your mind clear as you stand here

11  today?

12            THE DEFENDANT:  Yes, it is, Your Honor.

13            THE COURT:  Do you understand everything being said

14  to you?

15            THE DEFENDANT:  Yes, I do, Your Honor.

16            THE COURT:  Mr. White, have you discussed the

17  question of a guilty plea with you client?

18            MR. WHITE:  Yes, I have, Your Honor.

19            THE COURT:  And in your view, does he understand the

20  rights he will be waiving by pleading guilty?

21            MR. WHITE:  Yes, he does, Your Honor.

22            THE COURT:  Do you have any question as to your

23  client's competence to proceed today?

24            MR. WHITE:  No, I do not.

25            THE COURT:  Okay.

PROCEEDINGS                                    12

1          Mr. Schoeman, do you have any question about your

2    client's competence?

3          MR. SCHOEMAN:  Not at all.

4          THE COURT:  Okay.  All right.

5          Mr. Cohen, you have a right to be represented by

6    counsel at trial and at every other stage of the proceedings

7    in this case.

8          Do you understand that?

9          THE DEFENDANT:  I do, Your Honor.

10         THE COURT:  If at any time in the future it becomes

11   necessary to do so, the Court will appoint counsel for you.

12         Do you understand that?

13         THE DEFENDANT:  I do.

14         THE COURT:  All right.

15         Mr. Cohen, are you satisfied with the assistance

16   your attorneys have given you thus far in this matter?

17         THE DEFENDANT:  I am.

18         THE COURT:  Do you feel you need more time to

19   discuss with them the question of a guilty plea?

20         THE DEFENDANT:  No, I do not.

21         THE COURT:  Okay.  Now, you are agreeing to plead

22   guilty to Count Ten of the indictment against you, which

23   charges you with material false statements.

24         Do you understand that?

25         THE DEFENDANT:  Yes, I do, Your Honor.

PROCEEDINGS                                    13

1          THE COURT:  And I'm simply going to read

2    paragraph 51 of the indictment and then ask the government to

3    set forth the elements of the crime that the government would

4    have to prove in order to find you guilty of this charge, if

5    you decided to go to trial on it.

6          THE DEFENDANT:  Understood.

7          THE COURT:  Count Ten charges you with, as follows:

8    Quote, on or about May 30th, 2013, within the Eastern District

9    of New York, the defendant, Michael Leslie Cohen, in a matter

10   within the jurisdiction of the Executive Branch of the

11   government of the United States, to wit: the Federal Bureau of

12   Investigation, did knowingly and willfully make one or more

13   materially false, fictitious, and fraudulent statements and

14   representations to wit:

15          A, that the backdated letter was not backdated when,

16   in fact, as Coehn then and there well knew and believed the

17   backdated letter was backdated;

18          And B, that Cohen had received the backdated letter

19   from CC-1 in 2010 when, in fact, as Cohen then and there well

20   knew and believed he had received the backdated letter from

21   CC-1 in or about March of 2012, end quote.

22          And so I'm going to -- do you understand the charge

23   in Count Ten?

24          THE DEFENDANT:  I do, Your Honor.

25          THE COURT:  All right.  I'm going to ask the

PROCEEDINGS                                      14

1   government to set forth the elements of the crime that the

2   government would have to prove to a jury beyond a reasonable

3   doubt and unanimously in order to find the defendant guilty of

4   Count Ten, if the defendant decided to go to trial.

5           MR. McDONALD:  Yes, Your Honor.

6           There's five elements the government would have to

7   prove beyond a reasonable doubt.

8           First, that on or about the date specified in the

9   indictment, the defendant made a statement or representation.

10          Second, that this statement or representation was

11  material.

12          Third, that the statement or representation was

13  false, fictitious, or fraudulent.

14          Fourth, that the false, fictitious, or fraudulent

15  statement was made knowingly and willfully.

16          And, fifth, that the statement or representation was

17  made in the matter within the jurisdiction of the government

18  of the United States.

19          THE COURT:  So, Mr. Cohen, do you understand the

20  elements of the crime that the government would be required to

21  prove to a jury beyond a reasonable doubt and unanimously if

22  you decided to go to trial in order to convict you of this

23  crime?

24          THE DEFENDANT:  I do.

25          THE COURT:  All right.  You have certain rights.

PROCEEDINGS                                    15

1    I'm going to go over those rights with you.  Please listen

2    carefully to your rights.

3              You have the right to plead not guilty to this

4    charge.  No one can be forced to plead guilty.

5              Do you understand that?

6              THE DEFENDANT:  I do.

7              THE COURT:  If you plead not guilty to this charge,

8    or persist in a plea of not guilty, you have a right under the

9    constitution and laws of the United States to a speedy and

10   public trial before a jury with the assistance of your

11   attorneys.

12             Do you understand that?

13             THE DEFENDANT:  I do, Your Honor.

14             THE COURT:  At any trial, you would be presumed to

15   be innocent.  You would not have to prove that you were

16   innocent.  This is because under our system of law, it is the

17   government that must come forward with proof that establishes

18   beyond a reasonable doubt that you are guilty of the crime

19   charged.  If the government failed to meet this burden of

20   proof, the jury would have the duty to find you not guilty.

21             Do you understand that?

22             THE DEFENDANT:  I do, Your Honor.

23             THE COURT:  In the course of the trial, witnesses

24   for the government would have to come to court and testify in

25   your presence.  Your attorneys would have the right to

1    cross-examine these witnesses.  They could raise legal

2    objections to evidence the government sought to offer against

3    you.  They could offer evidence on your behalf and compel

4    witnesses to come to court and testify, if you or your

5    attorneys thought there was evidence that might help you in

6    this case.

7              Do you understand that?

8              THE DEFENDANT:  I do, Your Honor.

9              THE COURT:  At a trial, you would have the right to

10   testify in your own behalf, if you wished to do so.  On the

11   other hand, you could not be forced to be a witness at your

12   trial.  This is because under the constitution and laws of the

13   United States, no person can be forced to be a witness against

14   themselves.

15             If you wished to go to trial but chose not to

16   testify, I would instruct the jury that they could not hold

17   that against you.

18             Do you understand that?

19             THE DEFENDANT:  I understand that.

20             THE COURT:  Instead of going to trial you plead

21   guilty to the crime charged, and if I accept your guilty plea,

22   you'll be giving up your right to a trial and all the other

23   rights that I have just discussed.  There will be no trial in

24   this case, as far as you are concerned.  There will be no

25   appeal on the question of whether you did or did not commit

PROCEEDINGS                                    17

1    this crime.

2              The only reason that you could appeal would be if

3    you thought I did not properly follow the law in sentencing

4    you; otherwise, I will simply enter a judgment of guilty based

5    upon your plea of guilty.

6              Do you understand that?

7              THE DEFENDANT:  I understand.

8              THE COURT:  If you do plead guilty, I'll have to ask

9    you certain questions about what you did in order to satisfy

10   myself that you are guilty of the charge.  You'll have to

11   answer my questions and acknowledge your guilt.  If you do

12   this, you will giving up your right not to incriminate

13   yourself.

14             Do you understand that?

15             THE DEFENDANT:  I understand, Your Honor.

16             THE COURT:  Mr. Cohen, are you willing to give up

17   your right to a trial and all the other rights that I have

18   just discussed with you?

19             THE DEFENDANT:  I am.

20             THE COURT:  I'm going to hand you an agreement in

21   17-CR-544, United States of America against Michael L. Cohen.

22   It consists of six pages.

23             Mr. Cohen, have you read this document?

24             THE DEFENDANT:  I have.

25             THE COURT:  Have you discussed it with your

PROCEEDINGS                                    18

1    attorneys?

2              THE DEFENDANT:  I have.

3              THE COURT:  Have they answered any and all questions

4    that you had about the document?

5              THE DEFENDANT:  Yes, they have.

6              THE COURT:  And you understand your rights and

7    obligations under this agreement?

8              THE DEFENDANT:  I do, Your Honor.

9              THE COURT:  Okay.  Let's turn to page 6.

10             On page 6, is that your signature --

11             THE DEFENDANT:  It is.

12             THE COURT:  -- under you name?

13             THE DEFENDANT:  It is, Your Honor.

14             THE COURT:  Did you sign the agreement today?

15             THE DEFENDANT:  I did, Your Honor.

16             THE COURT:  And counsel also signed the agreement?

17             MR. WHITE:  I did, Your Honor.

18             THE COURT:  And the government has executed the

19    agreement as well?

20             MR. McDONALD:  We did, Your Honor.

21             THE COURT:  All right, please return the agreement

22    to me.

23             I have an important question for you now, sir.

24             Is there any other promise that has been made to get

25    you to plead guilty that is not contained in this agreement?

PROCEEDINGS                                    19

1          THE DEFENDANT:  There is not, Your Honor.

2          THE COURT:  I'm going over the terms of the

3    statutory penalties associated with pleading guilty to this

4    crime as set forth in paragraph 1 of the agreement.

5          There is no minimum term of imprisonment, and the

6    maximum term of imprisonment is five years.

7          The maximum supervised release term is three years.

8    That would follow any term of imprisonment.

9          If you violated a condition of your supervision, you

10   could be sentenced up to two years in jail without credit for

11   the time you previously served in jail, or the time you

12   previously served on supervised release.

13         There's a maximum fine of $250,000.  Restitution is

14   not applicable.  And there's a $100 special assessment, which

15   is mandatory.

16         So do you understand the statutory penalties

17   associated with pleading guilty?

18         THE DEFENDANT:  I do, Your Honor.

19         THE COURT:  Now, Mr. White, have you and

20   Mr. Schoeman gone over the sentencing procedures in connection

21   with this crime?

22         MR. WHITE:  Yes, we've discussed them extensively

23   with Mr. Cohen.

24         THE COURT:  And in your view, does he understand how

25   sentencing would work in his case?

PROCEEDINGS                           20

1          MR. WHITE:  In my opinion, yes, he does, Your Honor.

2          THE COURT:  Mr. Cohen, have your attorneys discussed

3    sentencing with you?

4          THE DEFENDANT:  Yes, they have, Your Honor.

5          THE COURT:  They answered all your questions?

6          THE DEFENDANT:  They have, Your Honor.

7          THE COURT:  And do you feel you have a basic

8    understanding of how sentencing will work in your case?

9          THE DEFENDANT:  I do.

10         THE COURT:  I'm going to discuss sentencing with you

11   as well.

12         In sentencing you, sir, I'm required to take into

13   consideration a number of things about you and about the crime

14   to which you are pleading guilty.  When I do that, I will be

15   directed to a guideline that will provide a sentencing range.

16         I'm not required to sentence you within the range

17   provided by the guideline, but I am required to carefully

18   consider the guideline recommendation, among other things, in

19   deciding what would constitute a reasonable sentence in your

20   case.  It is my experience a sentence within the guideline

21   range is often reasonable and appropriate, but that is not

22   always the case.

23         In determining an appropriate sentence for your

24   case, I will consider possible departures from that range

25   under the sentencing guidelines, as well as other statutory

1    sentencing factors.  I may ultimately decide to impose a

2    sentence that is more lenient or more severe than the one

3    recommended by the guidelines.

4              If I do so, I will explain the reasons for the

5    sentence that I have selected.

6              Do you understand that?

7              THE DEFENDANT:  I understand.

8              THE COURT:  It is important to understand no one

9    knows today what your exact guideline range will be.  Any

10   calculations contained in your plea agreement are estimates

11   and I am not bound by them.

12             Do you understand that?

13             THE DEFENDANT:  I understand.

14             THE COURT:  Before I impose sentence, I will receive

15   a report prepared by the Probation Department which will

16   calculate a particular guideline range.  You and your

17   attorneys will have the opportunity to see that report.  If

18   you think it's mistaken or incomplete in any way, you'll have

19   the opportunity to bring that to my attention.

20             You must understand that no one can make any promise

21   to you as to the sentence I will impose.  Your attorneys or

22   the prosecutors may have made predictions to you, and they

23   make recommendations to the Court concerning the sentence I

24   should impose, and I will listen carefully to whatever they

25   say.  But you must clearly understand that the final

PROCEEDINGS                                      22

1    responsibility for sentencing you is mine alone.

2                While I may view this case identically to the

3    attorneys, I may also view the case differently.  If so, I may

4    not impose the sentence that they have predicted or

5    recommended.  Even if I sentence you differently from what the

6    attorneys or anyone else has estimated or predicted, you would

7    still be bound by your guilty plea, and you will not be

8    allowed to withdraw that.

9                Do you understand that?

10               THE DEFENDANT:  I understand.

11               THE COURT:  Now, I note that the government has made

12   an estimate of the guideline calculation in the plea agreement

13   at paragraph 2.

14               Assuming that you plead guilty today, and you have

15   no prior felony convictions, you will have an adjusted offense

16   level of 12, which puts you -- and your guideline sentence is

17   10 to 16 months in the custody of the Attorney General.

18               Is that within the government's current prediction?

19               MR. McDONALD:  That's the government's estimate,

20   Your Honor.

21               THE COURT:  Do you understand that that's the

22   government's current estimate?

23               THE DEFENDANT:  I do, Your Honor.

24               THE COURT:  Now, in this plea agreement letter

25   that's dated today, May 15th, 2019, that you have just told me

1    that you have discussed with your attorneys and which you

2    signed today, there is an agreement regarding your right to

3    appeal your sentence.

4              The agreement letter says, and I want to make sure

5    that you understand this, Mr. Cohen, that by signing this

6    agreement, you agree not to appeal, or in any other way

7    challenge the sentence I impose upon you if it is 16 months or

8    less.  If I were to sentence you to more than 16 months, and

9    you believe there is a legal or other error in my doing that,

10   you would then have the right to appeal your sentence to the

11   U.S. Court of Appeals for the Second Circuit.

12             Do you understand that?

13             THE DEFENDANT:  I understand that, Your Honor.

14             THE COURT:  Do you understand that you have the

15   right to appeal only if I sentence you to more than 16 months?

16             THE DEFENDANT:  I do.

17             THE COURT:  Do you understand that even if the

18   sentence I give is you more severe than what you may be

19   thinking or hoping you will receive, you are still going to be

20   bound by your guilty plea and not permitted to withdraw it.

21   You will not be able to challenge or appeal that sentence as

22   long as it is 16 months or less, as we have discussed?

23             THE DEFENDANT:  I understand.

24             THE COURT:  Okay.  Do you have any questions you

25   would like to ask me about the charge, your rights, or

PROCEEDINGS

24

1   anything else related to this matter that may not be clear to

2   you?

3            THE DEFENDANT:  No.  I have no questions, Your

4   Honor.

5            THE COURT:  Okay.  All right.

6            Mr. White, is there anything you would like me to

7   discuss with your client in further detail before I proceed to

8   formal allocution?

9            MR. WHITE:  Nothing further, Your Honor.

10           THE COURT:  Do you know of any reason why your

11  client should not enter a plea of guilty to this charge?

12           MR. WHITE:  No.

13           THE COURT:  Are you aware of any viable legal

14  defense to the charge?

15           MR. WHITE:  No, Your Honor.

16           THE COURT:  Okay.

17           Mr. Cohen, are you ready to plead at this time?

18           THE DEFENDANT:  I am, Your Honor.

19           THE COURT:  How do you plead to the charge contained

20  in Count Ten of the indictment charging you with materially

21  false statements; guilty or not guilty?

22           THE DEFENDANT:  Guilty.

23           THE COURT:  Are you making this plea of guilty

24  voluntarily and of your own free will?

25           THE DEFENDANT:  I am.

PROCEEDINGS                          25

1            THE COURT:  Has anyone threatened or forced you to

2    plead guilty?

3            THE DEFENDANT:  No, they haven't.

4            THE COURT:  Other than the agreement with the

5    government, has anybody made you any promise that caused you

6    to plead guilty?

7            THE DEFENDANT:  No, Your Honor.

8            THE COURT:  Has anyone made you any promise about

9    the sentence you will receive?

10           THE DEFENDANT:  No, Your Honor.

11           THE COURT:  Okay.

12           At this point I'd like you to state briefly in your

13   own words what you did to commit the crime charged in Count

14   Ten of the indictment.

15           MR. WHITE:  Your Honor, with the Court's permission,

16   Mr. Cohen is going to read from a statement that we worked out

17   with the government, because it's a little too long to recite

18   from memory.

19           THE COURT:  That's fine.

20           You've reviewed this allocution --

21           THE DEFENDANT:  Yes, I have, Your Honor.

22           THE COURT:  -- with your attorneys?

23           THE DEFENDANT:  Yes, I have.

24           THE COURT:  All right.  But it's your statement.

25           THE DEFENDANT:  Yes, it is, Your Honor.

PROCEEDINGS                                          26

1          THE COURT:  All right.  Go ahead.

2          And do it slowly.

3          THE DEFENDANT:  Sure.

4          From 1997 until 2013, I worked at Och-Ziff Capital

5    Management.  At the end of my time there, I was an executive

6    managing directer and head of European operations.

7          I agreed to a voluntary interview with the

8    Department of Justice attorneys, FBI agent, and SEC attorneys

9    on May 30th, 2013 at the U.S. Attorney's Office in Brooklyn.

10          I knew this interview was part of ongoing

11   investigations into Och-Ziff by the DOJ and SEC.

12          The interview lasted almost all day.  At the

13   beginning of the interview, I understood that I was providing

14   information to the DOJ and SEC in connection with their

15   investigation and that providing truthful answers was

16   important to both investigations.

17          At one point during this interview, the government

18   showed me a letter addressed to me dated October 14th, 2010,

19   and asked me questions about it.  I stated, in substance, the

20   date on the letter was accurate, that I received it in 2010.

21          The statements were false.  In fact, I knew this

22   letter had been written in 2012, not in October 2010, as the

23   date indicated.  I also knew that I received the letter in

24   2012, not 2010.

25          In 2012, because of the pending SEC investigation of

1   Och-Ziff, another person offered to write me the letter in

2   order to memorialize an oral agreement we had in 2010.  The

3   other person drafted the letter and put the 2010 date on it,

4   which I knew would create the false impression to the

5   government investigators that the government had been

6   documented in writing at that time.  Sorry, that the agreement

7   had been documented in writing at that time.

8              The letter was responsive to subpoenas the SEC

9   served on Och-Ziff and me in 2012.  And even though I knew the

10  date on the letter was wrong, I provided a copy of the letter

11  to an Och-Ziff lawyer and produced the letter to the SEC in

12  response to the subpoena to me.

13             Then, when I was shown a copy of the letter in the

14  May 2013 interview with government lawyers, I gave the

15  inaccurate answers.

16             I knew at the time I had made the false statements

17  in the interview that the date on the letter and when I

18  received it were both of interest to the government's

19  investigation, and I made them with the intent to mislead the

20  government agencies who were present about those facts.

21             After the interview, I asked my lawyer to contact

22  the DOJ and SEC lawyers and provide them with the correct

23  information about the letter, which my -- which he did two

24  business days later.

25             THE COURT:  And the Federal Bureau of Investigation

1   was also involved in this?

2            THE DEFENDANT:  They were present in the interview.

3            THE COURT:  Anything else?

4            MR. McDONALD:  No, Your Honor.  We believe it's

5   sufficient.

6            THE COURT:  All right.

7            And at one point you said "memorialize".  You used

8   that word?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Based on the information you've given to

11  me, I find that you are acting voluntarily, that you fully

12  understand the charge, your rights, and the consequences of

13  your plea; there is, moreover, a factual basis for the plea,

14  and I, therefore, accept your plea of guilty to Count Ten of

15  the indictment.

16           And I'm going to schedule a sentencing for

17  Wednesday, September 22nd, 2019 at 11 a.m.

18           Mr. Cohen, you'll be contacted by a probation

19  officer for a presentence interview.

20           Your attorneys will want to be present for the

21  interview.

22           Please provide them with the information that's

23  needed by probation officer, him or her, for their presentence

24  investigation.

25           You and your attorneys will receive a copy of the

PROCEEDINGS                                    29

1   report.  Please review it carefully.  If there is anything in

2   the report that is in error, or if there is something I should

3   know about you that is not in the report, your attorneys will

4   provide that information in writing to me, to the Probation

5   Department, and to the government.

6              And when you come to Court to be sentenced, I will

7   have read everything that's been provided to me in writing.

8              And so do you have any questions?

9              THE DEFENDANT:  I don't, Your Honor.

10             THE COURT:  All right.

11             I'm going to hand the plea agreement to the

12  government and request a photostatic copy for the Court's

13  file.

14             Yes?

15             MR. McDONALD:  Your Honor, the last thing we just

16  would put on the record that we'd ask the Court to continue

17  the bail conditions that have been set prior to the

18  defendant's plea, and we'd request those conditions carry

19  forward now that the defendant's pled guilty.

20             THE COURT:  That's fine.

21             Anything else from the defense?

22             MR. WHITE:  No, Your Honor.

23             THE COURT:  All right, sir, I'll see you in

24  September.

25             THE DEFENDANT:  Thank you.

1          MR. SCHOEMAN:  Thank you, Your Honor, for staying

2     late for us.

3          MR. McDONALD:  Thank you.

4

5          (Whereupon, the matter was concluded.)

6

7                    *    *    *    *    *

8

9

10    I certify that the foregoing is a correct transcript from the
      record of proceedings in the above-entitled matter.

11

12    s/ Linda D. Danelczyk                May 18, 2019

13

14      LINDA D. DANELCZYK                    DATE

15

16

17

18

19

20

21

22

23

24

25