**MORRISON | FOERSTER**

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI
SINGAPORE, TOKYO, WASHINGTON, D.C.

November 18, 2019

Writer's Direct Contact
+1 (212) 468.8016
RWhite@mofo.com

By ECF Filing
The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11201

Re:   *United States v. Michael L. Cohen*, 17 CR 544 (NGG)

Dear Judge Garaufis:

We represent defendant Michael Cohen in connection with the above-referenced case. Mr. Cohen is scheduled for sentencing tomorrow, November 19, 2019, at 12:00 noon. We submit this letter to briefly respond to several points in the government's sentencing letter submitted on Friday of last week.

Sentencing Guidelines

In its November 15, 2019 letter ("Govt. Letter"), the government argues for the first time that the defendant stipulated, pursuant to § 1B1.2(c), to having committed another offense and that a different guideline than the one applicable to the offense of conviction should be used. This is simply incorrect and it comes a surprise to both the defendant and defense counsel.

First, the plea agreement itself is flatly inconsistent with the notion that such a stipulation was entered into by the parties. The plea agreement explicitly noted that that the defendant "does not stipulate" to the government's guideline calculation, which set forth its view that the obstruction of justice guideline applied. Plea Agreement ¶ 2. The plea agreement also clearly states that "no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties." Plea Agreement ¶ 7. Thus, the plea agreement is definitive evidence that there was no "oral stipulation" of the type the government now contends existed. Moreover, while the Court was reviewing the plea agreement's terms with Mr. Cohen during the plea hearing, neither the government nor anyone else said anything to indicate that, contrary to the plea agreement's prohibition on oral agreements, the parties were nonetheless intending to orally modify its terms. May 15,

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
November 18, 2019
Page Two

2019 Tr. at 17-19, 22-23. Defense counsel's remark that Mr. Cohen's allocution had been "worked out" with the government cannot seriously be considered equivalent to the more formal "plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s)" within the meaning of § 1B1.2(c). Since such a stipulation causes the defendant to be "treated as if [he] had been convicted of additional count(s) charging those offense(s)," the Court can be certain that if that was the parties' intent, both the government and defense counsel would have informed the Court so that the Court could ensure that the defendant was entering into that stipulation knowingly and voluntarily. Defense counsel's comment presumably was not interpreted by the Court as a stipulation because it was not one.[1]

The government does not cite, nor has the defense been able to find, a single case in the Second Circuit or elsewhere in which a stipulation under § 1B1.2(c) has been found to arise from the defendant's (or defense counsel's) statements at a plea hearing. Instead, in every single case we have been able to locate applying § 1B1.2(c), the stipulation was set forth in a plea agreement or in a statement of facts attached to a plea agreement. In fact, in *United States v. Lowe*, 261 Fed. Appx. 235, 237 (11th Cir. 2008), the lone case the government cites for the proposition that a stipulation under § 1B1.2(c) need not be explicit, the written plea agreement specifically stipulated that the defendant committed two additional crimes. *Id.* at 236. That is exactly what the U.S. Attorney's Office in this district does when it actually enters into such a stipulation. *See, e.g.*, Plea Agreement, *United States v. Azaryev*, 17 CR 478 (WFK), ECF No. 26 at ¶¶ 2-3 (setting forth in detail the additional criminal offenses to which "the defendant stipulates and admits" and the resulting guidelines grouping analysis and providing that "Pursuant to [Guidelines] § 1B1.2(c), the defendant agrees that, at the time of sentencing, the conduct described in this paragraph shall be considered by the Court and treated as if the defendant had been convicted of additional counts charging those offenses.") (attached hereto as Exhibit A).

Second, there was absolutely no discussion between the government and defense counsel regarding a stipulation under § 1B1.2(c) during the extensive negotiations that led to Mr. Cohen's plea. During those negotiations and at the time of the guilty plea, the government advised defense counsel that its position was that the obstruction of justice guideline, § 2J1.2, applied to Mr. Cohen's conduct based upon an entirely different guideline provision. At that time, the government advanced the argument that a cross-reference in § 2B1.1(c)(3) required that the obstruction guideline be used. The defense disagreed with this position and the plea agreement accordingly noted that that the defendant "does not stipulate" to the government's guideline calculation. Plea Agreement ¶ 2. The Probation Department considered the

---

[1] Tellingly, when the government filed its objections to the PSR, it did not even allege that there was an agreement or stipulation between the parties, nor did it mention defense counsel's remark at the plea hearing, which is the supposed evidence of the parties' stipulation. October 15, 2019 Govt. Letter to Probation Dept. at 2.

ny-1803452 v8

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
November 18, 2019
Page Three

government's cross-reference theory and rejected it, relying upon applicable case law. PSR ¶ 25. When the government abandoned that theory and instead raised its § 1B1.2 theory in its objections to the PSR, the Probation Department correctly rejected it as inconsistent with the plea agreement. October 23, 2019 Addendum to PSR at p. 3.

Finally, we note that the guideline provision on which the government relies, § 1B1.2(c), is plainly inapplicable on its face. The government's position is that there was a stipulation that establishes a more serious offense than the offense of conviction and therefore the guideline for the more serious offense should be used. That situation is covered by sub-section (a) of § 1B1.2, not sub-section (c). The government concedes that it cannot meet the standard for establishing a stipulation under sub-section (a) because Application Note 1 requires that, for that sub-section to apply, the parties must "explicitly agree" that the stipulation is "a stipulation for such purposes," which is plainly not the case here. Govt. Letter at 8, n. 2. Sub-section (c), by contrast, applies where there is a stipulation that there is an "additional offense," besides the offense of conviction, and the defendant "shall be treated as if [he] had been convicted of additional count(s) charging those offense(s)." As Application Note 3 makes clear, sub-section (c) addresses "circumstances in which the provisions of Chapter Three, Part D (Multiple Counts) are to be applied although there may be only one count of conviction." In other words, if sub-section (c) applies, the sentencing court must apply the grouping rules for multi-count convictions. Here, nothing in the plea agreement, the plea colloquy, the government's objections to the PSR or its letter to the Court refers to multiple counts of conviction or seeks to apply the grouping analysis required by Chapter Three, Part D. In short, sub-section (a) – not sub-section (c) – is the one that would apply to this situation, but the government concedes that it cannot meet the requirements of that provision.

The truth of the matter is that Mr. Cohen, through his allocution, took full responsibility for his conduct and placed his false statements in context for the Court (and did so in a manner that the government agrees was factually accurate). But he did not thereby stipulate with the government that a higher sentencing guideline would apply to his conduct. We respectfully submit that, as determined by the Probation Department, the correct advisory range for that conduct is 0 to 6 months.

Uncharged and Unproven Allegations

Given the extensive "Factual Background" set forth in the government's letter, we are compelled to note for the Court: (1) the government concedes in its letter the factual accuracy of Mr. Cohen's allocution to the Charge in Count 10 of the indictment (Govt. Letter at 8); (2) the government has agreed to dismiss the charges in Counts One through Nine (Plea Agreement ¶ 5(a)); and (3) the government has promised in the plea agreement not to take a position concerning where within the applicable guidelines range the Court should sentence Mr. Cohen and not to move for an upward departure (Plea Agreement ¶ 5(b) and (c)). We

ny-1803452 v8

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
November 18, 2019
Page Four

will therefore address only briefly the many unproven allegations and pejorative characterizations that the government included in its letter.

First, the government insinuates that Och-Ziff's transactions pre-dating Strata with the London Businessman (whom the government chooses to refer to as Co-Conspirator 1 for maximum prejudicial effect) were somehow questionable and that the Court should give consideration to them in sentencing Mr. Cohen. Govt Letter at 2-3, 12. The government ignores the fact that these transactions were extensively vetted by lawyers and approved by the firm's senior management. The government also fails to note that the London Businessman was a well-known investor who had worked with major investment banks and who was a member of a prominent family of Lebanese descent, whose brother was a well-respected U.S.-based academic, author and member of the Council on Foreign Relations. The government conducted an exhaustive, seven-year long investigation, leaving no stone unturned, and concluded that no prosecution of Mr. Cohen was warranted with respect to these matters. The fact that the government now seeks to tar him by injecting vague, unproven allegations at his sentencing is unfair and should be rejected.

Second, the government mischaracterizes Mr. Cohen's role in the Strata[2] transaction, ignoring the fact that Mr. Cohen denies participating in any fraudulent scheme and that it has agreed to dismiss those charges. At worst, the Strata transaction involved a failure to disclose a potential conflict of interest by Mr. Cohen in a transaction that Mr. Cohen and other investment professionals at Och-Ziff believed would be profitable for the fund's investors. The purchase price – a 47% discount to Strata's market price – was advantageous for the fund and its extensive financial analysis supporting the investment was provided to the Charitable Foundation's sophisticated investment professionals. Had the case proceeded, the defense would have vigorously contested the charges (including by calling exculpatory witnesses whom the government has never interviewed). When Mr. Cohen was advised in 2013 that his earlier efforts to ameliorate his potential conflict were insufficient, he agreed to put the Charitable Foundation back in the position it would have been if the Strata transaction had never occurred. The government's attempt to turn Mr. Cohen's voluntary, no-strings-attached, restitution payment of over $8 million to an entity it regards as a victim into something negative is cynical in the extreme.

---

[2] The government incorrectly identifies Strata as an "oil and gas" company (Govt. Letter at 3). In fact, it was a holding company that owned shares of companies engaged in coal and iron ore mining.

ny-1803452 v8

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
November 18, 2019
Page Five

Offense Conduct

Lost amid the uncharged allegations and gratuitous references to Mr. Cohen's financial resources[3] in the government's letter is the fact that Mr. Cohen's offense conduct is essentially undisputed. Based on the government's sentencing submission – including its concession that Mr. Cohen's allocution was factually accurate (Govt. Letter at 8) – and information provided by the government in discovery, the following facts are not disputed:

- In 2010, the London Businessman agreed with Mr. Cohen not to re-pay his loan to Mr. Cohen from the proceeds of the Strata transaction. May 15, 2019 Tr. 26-27 (letter "memorialize[d] an oral agreement we had in 2010").

- In 2012, because of the pending SEC investigation, the London Businessman offered to write Mr. Cohen a letter setting forth their 2010 oral agreement. The London Businessman dated the letter in 2010 and drafted it to give the appearance that it was created before the Strata transaction closed. May 15, 2019 Tr. 26-27.

- On November 27, 2012, Mr. Cohen produced the letter, which was responsive to a subpoena, to the SEC even though he knew the date on the letter was wrong. May 15, 2019 Tr. 27.

- By "early 2013," the government was aware from bank records it had obtained that the London Businessman, contrary to his agreement with Mr. Cohen and to the letter, had used the Strata proceeds to re-pay the loan. Govt. Letter at 5. The SEC had made two overlapping requests to a foreign regulator for these bank records of the London Businessman in February and July 2012, months before the letter was produced by Mr. Cohen. July 11, 2017 SEC Letter to Defense Counsel, Attachment at 24.

- At his April 4, 2013 interview with government agents, Mr. Cohen said that the London Businessman had given him a letter stating that no proceeds from the Strata transaction would be used to repay the loan, but the letter was not shown to Mr. Cohen and he was not questioned about the date. Govt. Letter at 5.

- At his May 30, 2013 interview with government agents, Mr. Cohen falsely stated that the 2010 date on the letter was accurate and that he had received it in 2010, when in

---

[3] The government's letter includes no less than 11 references to Mr. Cohen's financial resources, and even though the PSR sets forth extensive information regarding Mr. Cohen's financial condition, the government attached a six-year-old British newspaper article speculating about his finances.

ny-1803452 v8

MORRISON | FOERSTER

The Honorable Nicholas G. Garaufis
November 18, 2019
Page Six

fact, he knew that it had been created in 2012 and he had received it in 2012. May 15, 2019 Tr. 26.

- At the time of the May 30, 2013 interview itself, the government knew that Mr. Cohen's statements were false. Govt. Letter at 8 ("government knew he was lying").

- After the May 30, 2013 interview, Mr. Cohen asked his attorney to correct his statements to the government, which his lawyer did two business days after the interview. May 15, 2019 Tr. 27.

Based on the substantial mitigating factors forth in our Sentencing Memorandum, we respectfully submit that a probationary sentence for Mr. Cohen is "sufficient, but not greater than necessary" for this conduct.

Respectfully submitted,

*Ronald G. White*
Ronald G. White

*PAUL H. SCHOEMAN (BY RGW).*
Paul H. Schoeman
Kramer, Levin, Naftalis & Frankel, LLP

cc:   Government counsel (via ECF)

ny-1803452 v8