

U.S. Department of Justice

United States Attorney
Eastern District of New York

AES:DCP/JPL/JMM/GMM  
F. #2017R01739

271 Cadman Plaza East  
Brooklyn, New York 11201

March 25, 2020

By Email and ECF

The Honorable Nicholas G. Garaufis  
United States District Judge  
United States District Court  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re: United States v. Michael Cohen, et al.  
     Criminal Docket No. 17-544 (NGG)

Dear Judge Garaufis:

   The government respectfully submits this letter in response to defendant Michael Cohen's motion for a modification of an imposed term of imprisonment, pursuant to Title 18, United States Code, Section 3582(c)(1)(A)(ii), filed on March 24, 2020 (the "motion" or "Def. Mot."). The defendant seeks a reduction of nearly one-third of his three-month sentence due to the COVID-19 pandemic. For the reasons set forth below, the motion should be denied.

I. Background

   On November 19, 2019, the Court sentenced Mr. Cohen to three months incarceration. At the defendant's request, he was permitted to surrender to FCI Berlin in Berlin, New Hampshire on January 29, 2020. He is serving his sentence in the minimum security satellite camp at FCI Berlin and is scheduled to be released on April 27, 2020.

II. Applicable Law

   The statute upon which the defendant relies, 18 U.S.C. § 3582(c)(1)(A)(i) is referred to as the "compassionate release" statute and permits a Court to modify an already imposed sentence upon a showing of "extraordinary and compelling reasons." See United States v. Zullo, 09-CR-64, 2019 WL 7562406, at *1 (D. Vt. Sept. 23, 2019). Prior to the enactment of the First Step Act of 2018, such a modification required a motion by the Bureau of Prisons ("BOP"). Id. (citing Morales v. United States, 353 F. Supp. 2d 204 (D. Mass.

2005)). The First Step Act of 2018 removes the requirement that BOP file the motion and permits defendants to file motions pursuant to this section.[1]

The United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") and BOP policy have established clear criteria to aid in a court's determination of when compassionate release is appropriate pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). See U.S.S.G. § 1B1.13; see also BOP Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)") (available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf). Both the Guidelines and the BOP Program Statement primarily limit compassionate relief to cases of serious illness or impairment, advanced age or a need to care for a child, spouse or registered partner. See id.; see also United States v. Traynor, 04-CR-0582 (NGG), 2009 WL 368927, at *1 n.2 (E.D.N.Y. Feb. 13, 2009). As the Court recognized in Traynor, Congress noted that Section 3582(c)(1) "applies . . . to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." Id. at *1 (citing Senate Report No. 98–225, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3304).

III. A Sentence Modification Is Not Warranted Under the Compassionate Release Statute

The defendant seeks early release and termination of his sentence on two grounds: first, that he is confined to a BOP facility that he asserts has a "confirmed case of coronavirus" (Def. Mot. at 1) and second, that if he serves the full sentence ordered by the Court "he will be unable to return to his family in England." (Def. Mot. at 2). For the reasons set forth below, neither of the defendant's grounds meet the standard for compassionate relief under 18 U.S.C. § 3582(c)(1)(A)(i) and his request should be denied.

A. Conditions at the Defendant's BOP Facility Do Not Provide a Basis to Grant Compassionate Release

With regard to the defendant's first argument for termination of his sentence, the defendant's claim that the BOP "confirmed that an employee at FCI Berlin who had been in contact with inmates had tested positive for the coronavirus" is not accurate. (Def. Mot. at 1). The government has spoken with a staff member at FCI Berlin who informed the government that no employee at FCI Berlin has tested positive for COVID-19. On March 19, 2020, the warden of FCI Berlin publicly stated that a former employee presented with

---

[1] As the defendant notes, 18 U.S.C. § 3582(c)(1)(A) contains a requirement that a defendant first request that the BOP make a motion for compassionate release and can only bring a motion him or herself if the BOP does not act within 30 days. (See Def. Mot. at 1, n. 1). Given that the defendant is currently scheduled to be released in approximately 33 days, the government agreed to waive that administrative notice period so the defendant could bring his motion before the Court prior to the conclusion of his sentence. The government's agreement to waive that notice period should not be interpreted in any way to undercut its position that the defendant's motion should be denied.

2

flu-like symptoms in Colorado on March 16, 2020 and was directed to self-quarantine in an abundance of caution, but was not tested and has not tested positive for COVID-19. That employee last worked at FCI Berlin on March 6, 2020, nearly three weeks ago. Nevertheless, in in an abundance of caution, all inmates and staff who came into contact with the employee were screened for COVID-19 symptoms and were (and remain) symptom free.[2]  See "North Conway doctor tests positive for coronavirus; former Berlin prison employee in self-quarantine," (last updated March 22, 2010) available at https://www.unionleader.com/news/health/coronavirus/memorial-hospital-doctor-tests-positive-for-covid/article_3e8410d9-165b-5da0-83ce-16024a120020.html).  Notably, the defendant was not among those screened because he did not have contact with that employee.  Finally, the BOP website contains a detailed COVID-19 response page that includes updates on all BOP employees and inmates who have tested positive for COVID-19. While three BOP staff members and three BOP inmates have tested positive for COVID-19, none were at FCI Berlin.[3]  See BOP COVID-19 Status, available at https://www.bop.gov/coronavirus/index.jsp.

Moreover, even if the defendant's facility did have a positive case of COVID-19, it would not provide a compelling reason to release the defendant early.  First, as the defendant admits, he is not in a high-risk category for complications from COVID-19, as he is neither of advanced age (he is currently 48 years old) nor has any underlying medical conditions.  Second, the BOP has implemented national measures to mitigate the spread of COVID-19 within prisons.  See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp.  These measures, which have been implemented at FCI Berlin, include the following:

- <u>Suspension of all social and legal visits</u>:  Social visits and legal visits have been suspended for 30 days, with case-by-case accommodations for attorney visits and

---

[2] FCI Berlin has two facilities on site: a minimum security satellite camp, where the defendant is incarcerated, and a medium-security facility.  The former employee who self-quarantined in Colorado worked in the medium-security facility.  FCI Berlin staff informed the government that since February, staff members have been segregated to minimize any potential spread between the two facilities.  Accordingly, there is little risk the defendant would have been exposed to COVID-19 even if the former employee was positive for the virus.

[3] The two articles cited by the defendant that refer to a confirmed positive test at FCI Berlin are inaccurate and likely the result of miscommunication between reporters and the BOP.  Indeed, one of the articles cited by the defendant from the Nashua Telegraph, contains second-hand information from a different publication and includes a quote from the mayor of Berlin characterizing the positive test as a "rumor."  See https://www.nashuatelegraph.com/news/nh-news-apwire/2020/03/19/federal-prison-staffer-in-berlin-tests-positive-for-covid-19/.  BOP staff, including at FCI Berlin, have confirmed that there has not been a positive case at FCI Berlin among either staff or inmates.

3

legal calls. Inmates will be provided additional inmate telephone minutes each month.

- <u>Inmate movement</u>: All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- <u>Screening and testing of inmates</u>: All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms. Inmates with exposure risk factors are quarantined. In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.

- <u>Modified Operations</u>: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

While the BOP and the government recognize the seriousness of COVID-19, the risk of potential exposure to COVID-19 in a BOP facility cannot alone form the basis to release a prisoner who makes a motion for release, particularly in a case such as this one where the defendant is not in a high-risk category.

Consequently, the defendant's assertion that he is at a risk of contracting COVID-19 at FCI Berlin does not provide an "extraordinary and compelling reason" to modify his sentence. Not only does FCI Berlin not have a confirmed case of COVID-19, but even if it did, it would not present a set of circumstances where "it would be inequitable to continue the confinement of the prisoner." See <u>Traynor</u>, 2009 WL 368927, at *1 n.2 (E.D.N.Y. Feb. 13, 2009). <u>All</u> prisoners at FCI Berlin, and in the BOP more broadly, are at some risk of contracting COVID-19. This does not put the defendant, individually, in an extraordinary and compelling situation and does not warrant a sentence modification. Accordingly, the defendant's argument that his confinement at FCI Berlin favors his release should be rejected.

B. <u>The Defendant's Desire to Be With His Family Does Not Provide a Reason to Grant Compassionate Release</u>

The defendant's second proffered "extraordinary and compelling" reason" for a sentence modification is similarly unpersuasive. The defendant asserts that there is a "strong possibility" that he may not be able to immediately return to his family in the United Kingdom at the completion of his sentence on April 27, 2020. (Def. Mot. at 2). While it is impossible to predict what, if any, travel restrictions will be in place at that time, there is currently no prohibition by the United Kingdom of citizens returning home despite the global reach of the pandemic. Indeed, the very article the defendant cites in support of his belief that the United Kingdom may close its borders states that citizens "<u>may not</u>" be able to return if travel restrictions are part in place that "they had not anticipated." (Def. Mot. at 2). Such

4

speculative, "unanticipated" travel restrictions cannot provide the basis for the exceedingly narrow form of compassionate release the defendant seeks.

Furthermore, even if travel restrictions are in place when the defendant is released, it does not provide the basis to grant the extraordinary relief of modifying his sentence. While it is understandable that the defendant would prefer to be with his family in the United Kingdom, that desire does not provide the compelling and unforeseen circumstances to modify his sentence. Individuals around the world, federal inmates and those at liberty alike, are each faced with unwanted and unanticipated constraints on family relationships stemming from COVID-19. The defendant does not argue that any member of his family is ill or that they will not be cared for if he is not present in the United Kingdom. See BOP Program Statement 50.5050. The defendant's wife is caring for his children, the youngest of whom is twelve years old. Moreover, as the Court is aware, the defendant and his family have considerable means and are not at subsistence risk if the defendant is not present.

Perhaps recognizing that his family circumstances do not meet the legal threshold for compassionate release, the defendant suggests that he should be released because he is a non-violent offender who has been deterred from two months in jail. (Def. Mot at 3) ("There is no meaningful additional deterrent or retributive effect of a three-month prison sentence compared to a two-month sentence."). The government disagrees. The defendant's self-serving statements that he has already served enough time in prison to have learned his lesson demonstrate, yet again, that the defendant believes the rules do not apply to him. After very careful consideration, the Court ordered the defendant to serve a three-month sentence of incarceration. The Court did not order the defendant to serve 60 days. And while the COVID-19 pandemic is certainly a serious situation, it does not provide the defendant with a particularized basis to leave jail early to be with his family. All prisoners, regardless of sentence, crime committed or country of residence, would likely prefer to be with their families at this time.

IV. The Case Law Cited By the Defendant Does Not Support His Compassionate Release

Finally, the case law cited by the defendant does not support any of the bases the defendant relies on for a modification of his sentence. The defendant's citation to United States v. Huneeus, 19 CR 10117 (D. Mass. March 17, 2020), Order (ECF No. 642) at 1, is inapposite. Although much of the briefing in Huneeus is sealed, as the defendant recognizes, the court's order in that case makes plain that the sentence modification was due to Huneeus's health and status as a high-risk defendant, which the defendant admits he is not. Moreover, Huneeus's sentence was modified such that he was released two weeks early after serving the rest of his five-month sentence – a very different proportion of his overall sentence than the modification proposed here – and Huneeus served the remainder of that time under home confinement, which is not something the defendant is proposing here. In fact, the defendant asserts that he will immediately leave the country if released.

5

The defendant's citation to United States v. Barkman, 2020 U.S. Dist. Lexis 4526, 19 CR 52 (D. Nev. March 17, 2020), Order (ECF No. 21) at 2, 4 is similarly inapplicable. In that case, the defendant's surrender date was delayed for 30 days, with the government's consent because the defendant was scheduled to surrender to the jail to begin a period of two days' intermittent confinement as a condition of one year probationary sentence that included 60 total days' intermittent confinement following conviction of a fish and wildlife misdemeanor. See Order (ECF No. 21, at pp. 9-10) (emphasis added); see also 16 USC §§ 1538(a)(1)(F) and 1540(b)(1). The argument for relief in Barkman was premised on the theory that the defendant, as someone who has had regular contact with the outside world, may unknowingly bring COVID-19 into the jail and infect the entire jail (because symptoms may not present for 14 days). In addition, the facility to which the defendant was set to surrender was unprepared to handle a COVID-19 case because, among other reasons, the jail did not have an on-site hospital. See Emergency Motion to Temporarily Modify Intermittent Confinement (ECF No. 20, at pp. 6, 8-10). Those circumstances are not present here.

Similarly, the defendant's citation to cases where pre-trial defendants were released on bail do not support his untenable position that all non-violent defendants should be released from BOP facilities. Unlike this defendant, who is serving his sentence, the incarceration of the defendants in those cases was governed the Bail Reform Act, and they still had the presumption of innocence. Moreover, while temporarily reducing the prison population, particularly of individuals in high-risk categories, might be advantageous in the fight against COVID-19, it is not the only concern that the government or the court must consider. Even in the cases cited by the defendant, the operation of the law and other societal interests remain paramount. For example, in United States v. Raihan, 20-CR-68 (BMC) (JO) (E.D.N.Y. March 12, 2020), the day after the defendant in question was released on bail, he violated his bond and was subsequently remanded by Magistrate Judge Lois Bloom. COVID-19 does not provide a blanket rationale to release all prisoners from the BOP, regardless of whether they are non-violent or first time offenders.

* * * * *

For the reasons set forth above, the COVID-19 pandemic does not provide a reason to grant the defendant's compassionate release, and his motion for a modification of his sentence should be denied.

<div style="margin-left: 50%;">Respectfully submitted,</div>

| | |
|---|---|
| RICHARD P. DONOGHUE<br>United States Attorney | ROBERT ZINK<br>Chief, Fraud Section<br>Criminal Division<br>U.S. Department of Justice |
| By:   /s/<br>David Pitluck<br>James McDonald<br>Jonathan Lax<br>Assistant U.S. Attorneys<br>(718) 254-6108 | By:   /s/<br>Gerald M. Moody, Jr.<br>Trial Attorney<br>U.S. Department of Justice<br>(202) 616-4988 |

cc:   Defense Counsel (by e-mail and ECF)
      Clerk of Court (by ECF)